*In re* MARRIAGE OF RACHEL DUNDAS, Petitioner-Appellee, and MICHAEL DUNDAS, Respondent-Appellant.

Second District No. 2—04—0573

Opinion filed February 2, 2005.

John R. Corneille and Heather M. Fritsch, both of Cliffe, Foster, Corneille & Buick, of DeKalb, for appellant.

No brief filed for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Prior to dissolving their marriage, petitioner, Rachel Dundas, and respondent, Michael Dundas, financed the purchase of a 1999 Dodge Durango. When their marriage was dissolved in 2003, the trial court incorporated into that judgment the parties' marital settlement agreement, which provided that respondent would pay petitioner maintenance of $200 per month until the car loan was paid in full. In February 2004, respondent petitioned to terminate maintenance, contending that petitioner was living with her boyfriend on a resident, continu-

ing, conjugal basis. See 750 ILCS 5/510(c) (West 2002). The trial court denied the petition, finding that respondent's obligation to make monthly payments toward the car loan was part of the parties' property settlement, not maintenance. Respondent timely appeals, claiming that the payments were maintenance and, thus, subject to termination pursuant to section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(c) (West 2002)). We affirm.

In resolving the issue raised on appeal, we must examine the parties' marital settlement agreement, which provides as follows:

"*PERSONAL PROPERTY*

\* \* \*

C. *MOTOR VEHICLES*

1. That Wife shall receive as her sole and exclusive property, free and clear of all right, title, interest, or claim of Husband, a certain 1999 Dodge Durango automobile. Wife shall pay any indebtedness on said vehicle and hold Husband harmless and indemnified with respect thereto."

Regarding maintenance, the parties had agreed not to seek support from each other. However, on the day of the hearing on the petition to dissolve the marriage, the parties modified the agreement to provide:

"Husband shall pay to Wife the amount of $200 per month as and for maintenance commencing December 2003 and continuing until the existing loan on her vehicle is paid in full."

Under a portion of the agreement entitled "Cooperation of Parties," petitioner and respondent agreed to waive any claim to maintenance, among other things. Specifically, the agreement provides:

"To the fullest extent by law permitted to do so, and except as herein otherwise provided, each of the parties does hereby forever relinquish, release, waive and forever quit claim and grant to the other, his or her heirs, personal representatives and assigns, all rights of maintenance, alimony, dower, inheritance, descent distribution, [and] community interest[.]"

At the hearing on the petition to dissolve the marriage, petitioner testified that she voluntarily signed the marital settlement agreement and that the agreement was fair and equitable. She stated that, pursuant to the agreement, she would keep the 1999 Dodge Durango, on which the parties still owed many thousands of dollars. Because of the outstanding balance on the loan, petitioner and respondent agreed that respondent would pay $200 per month to First National Bank in Clifton, which was the holder of the vehicle loan, until the loan was paid off. Petitioner acknowledged that she was responsible for the remainder of each month's loan payment, as the $200 did not cover the entire amount. Further, petitioner agreed that respondent's

monthly payments would be in the form of maintenance, meaning that she would be taxed on that money and that respondent could deduct those payments for tax purposes. She also agreed that she was waiving any further right to maintenance she may have. Respondent testified consistently with petitioner.

The trial court granted the petition to dissolve the parties' marriage, incorporating into that order the parties' martial settlement agreement. In so doing, the trial court referred to the monthly $200 payments as maintenance, but clarified that respondent, with these payments, was "essentially [paying] off [petitioner's] car loan." The trial court also found that "subject only to the provisions where [respondent] is to pay off a defined and prescribed debt on [petitioner's] car that both sides have entered into a knowing waiver of maintenance."

Approximately two months after the parties' marriage was dissolved, respondent petitioned to terminate maintenance, contending that petitioner was living with her boyfriend on a resident, continuing, conjugal basis. The trial court denied the motion, finding that any claim that petitioner was living with someone was irrelevant, as the monthly payments of $200 were part of the overall distribution of marital assets and debt. The trial court stated that it reached this conclusion after examining the agreement and the transcript of the dissolution proceedings. Based on these documents, the trial court found that the clear intent of the parties was that the $200 per month constituted car payments. Respondent timely appealed.

Before addressing the merits of this appeal, we note that petitioner, as appellee, has failed to file a brief in this court. Because we find the issue presented relatively straightforward, we may decide this case without petitioner's brief, pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (holding that a reviewing court should decide the merits of an appeal where the record is simple and the claimed error is such that a decision can be made easily without the aid of an appellee's brief). See *In re Marriage of Duffy*, 307 Ill. App. 3d 257, 259 (1999).

Turning to the merits, the issue raised on appeal is whether the monthly $200 payments were maintenance, subject to termination, or part of the parties' nonterminable property settlement. Respondent claims that the payments were maintenance, which would terminate upon petitioner living with another person on a resident, continuing, conjugal basis. See 750 ILCS 5/510(c) (West 2002). This issue requires us to interpret the parties' settlement agreement.

■ Interpreting a marital settlement agreement is a matter of contract construction. *In re Marriage of Hulstrom*, 342 Ill. App. 3d

262, 269 (2003). As such, courts seek to give effect to the parties' intent. *Hulstrom*, 342 Ill. App. 3d at 269. The language used in the marital agreement generally is the best indication of the parties' intent (*In re Marriage of Hahn*, 324 Ill. App. 3d 44, 46 (2001)), and when the terms of the agreement are unambiguous, they must be given their plain and ordinary meaning (*In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998)). However, where the language is ambiguous, parol evidence may be used to decide what the parties intended. *Hulstrom*, 342 Ill. App. 3d at 269. We review *de novo* an interpretation of a marital settlement agreement and a determination of whether the agreement's terms are ambiguous. *In re Marriage of Wassom*, 352 Ill. App. 3d 327, 330 (2004); *Hahn*, 324 Ill. App. 3d at 47.

■ Here, although the parties have labeled the monthly $200 payments as maintenance, merely characterizing the payments as such does not mandate a conclusion that the payments were actually maintenance. See *In re Marriage of Adamson*, 308 Ill. App. 3d 759, 769 (1999); *In re Marriage of Rowden*, 163 Ill. App. 3d 869, 872 (1987). Rather, a court must examine the substance of the agreement to determine its nature. *Adamson*, 308 Ill. App. 3d at 769. When we examine the substance of the agreement, we cannot conclude that the agreement's terms unambiguously provided that the monthly payments were maintenance because the terms in the agreement are susceptible to two different, yet equally plausible, interpretations. See *Hahn*, 324 Ill. App. 3d at 47. Specifically, the payments could have been maintenance or part of the property settlement. When the terms of a settlement agreement are susceptible to two different interpretations, the court must apply the interpretation that establishes the rational and probable agreement. *Hahn*, 324 Ill. App. 3d at 47. In resolving what the parties' rational and probable agreement was, we find *Rowden* instructive.

In *Rowden*, the parties purchased a car during their marriage, procuring a loan to purchase that vehicle. *Rowden*, 163 Ill. App. 3d at 870. The judgment dissolving the parties' marriage provided that the wife was awarded the vehicle, that the husband would pay the wife's car loan in lieu of maintenance, and that, except for the car payments, the parties waived any claim to maintenance. A few months after the parties' marriage was dissolved, the wife remarried. A year later, the husband filed for bankruptcy and ceased making payments on the car loan. The wife petitioned for a rule to show cause why the husband should not be held in contempt for failing to make the car payments. In ruling on the wife's petition, the trial court found that payment on the loan was part of the parties' property settlement, unaffected by the wife's remarriage, and the husband appealed. *Rowden*, 163 Ill. App. 3d at 871.

The appellate court affirmed, determining that the husband's payments on the car loan constituted part of the property settlement, not maintenance. *Rowden*, 163 Ill. App. 3d at 872. In reaching this conclusion, the appellate court noted that the payments were for a specific amount of money, paid over a definite period of time. *Rowden*, 163 Ill. App. 3d at 872. The court found it significant that, except for payment on the loan, the parties waived any right to maintenance and any claim they may have had to each other's property. *Rowden*, 163 Ill. App. 3d at 872. Further, the court observed that neither the label attached to the obligation nor the method of payment conclusively determines the nature of the award. *Rowden*, 163 Ill. App. 3d at 872.

Here, as in *Rowden*, other than the car payments, both parties waived any claim to maintenance. Further, the payments went to pay off the car that petitioner was awarded, and the evidence revealed that there was a large outstanding balance on that loan. Thus, the agreement, which the trial court accepted, gave petitioner the car without burdening her with paying a disproportionate share of the total cost of the car. Moreover, the agreement to make monthly payments was specifically linked to the amount of the car loan and its duration, and respondent was required to make payments directly to the holder of the loan. Even though respondent was not obligated to pay the entire amount of each installment, he was responsible for a specific portion of it, and his obligation terminated when the loan was paid in full.

Although, as respondent notes, some cases have determined that payment of a marital debt is maintenance, we do not find this proposition persuasive here, as the cases to which respondent cites concluded that payment of a marital debt is maintenance *within the meaning of the United States Bankruptcy Code* (11 U.S.C. § 1101 *et seq.* (2000)). See, *e.g.*, *Adamson*, 308 Ill. App. 3d at 770-71; see also *In re Marriage of Underwood*, 314 Ill. App. 3d 325, 327-28 (2000). In *Rowden*, the court considered whether the payments on the car loan were maintenance or part of the property settlement, irrespective of the impact the husband's bankruptcy proceeding would have on his obligation to make the wife's car payments. *Rowden*, 163 Ill. App. 3d at 872. Because whether an obligation is maintenance or part of the parties' property settlement is a question of state law, separate from and unaffected by whether the payments constituted a dischargeable debt under federal bankruptcy law, we do not find the cases to which respondent cites controlling here, as no bankruptcy proceeding is involved. See *Rowden*, 163 Ill. App. 3d at 872-73 (determining, under Illinois law, that husband's payments on car loan were part of the parties' property settlement, but, under federal bankruptcy law, the payments were maintenance and not dischargeable).

Thus, we hold that the core of the parties' agreement provided that the payments were part of the property settlement, not maintenance. Because respondent's obligation was not maintenance, we hold that the monthly $200 payments are not subject to termination pursuant to section 510(c) of the Act. See *Rowden*, 163 Ill. App. 3d at 872.

For these reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

O'MALLEY, P.J., and CALLUM, J., concur.