# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**In re Marriage of Bolte, 2012 IL App (3d) 110791**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF TERRY RAY BOLTE, Petitioner-Appellee, and SUE ELLEN BOLTE, Respondent-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0791 |
| Filed | September 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The termination of respondent's maintenance award based on the trial court's erroneous conclusion that the parties' settlement agreement provided for rehabilitative maintenance was reversed, along with the order requiring petitioner to pay only one-half of respondent's attorney fees, and the cause was remanded for a determination of a proper award of attorney fees after a review of maintenance according to the statutory factors. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, 97-D-462; the Hon. James G. Conway, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Mark W. Schwiebert (argued), of Schwiebert Law, P.C., of Rock Island, for appellant.

David W. Andich (argued), of Andich & Andich, of Rock Island, for appellee.

Panel

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Justices Holdridge and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    In April of 1998, the circuit court of Rock Island County entered a judgment of dissolution of marriage awarding the respondent, Sue Bolte, maintenance. On August 28, 2009, the petitioner, Terry Bolte, filed a petition to terminate maintenance. Sue filed a response and various motions, including a counterclaim to Terry's motion to terminate and a petition for attorney fees. Following a review hearing on September 2, 2011, the trial court terminated Terry's maintenance obligation and ordered him to contribute to half of Sue's attorney fees. Sue appeals, claiming the trial court abused its discretion in failing to consider the statutory factors of sections 504(a) and 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/501 *et seq.* (West 2010)) in terminating the maintenance award, and abused its discretion in failing to award all or substantially all of her attorney fees. We reverse and remand.

¶ 2                                BACKGROUND

¶ 3    Seven years prior to the dissolution of the parties' marriage, the parties learned that Sue suffered from myasthenia gravis, a progressive, disabling disease that causes respiratory, circulatory and motor skill problems. Following 27 years of marriage, the parties obtained a judgment for dissolution of marriage on April 22, 1998, which incorporated a marital settlement agreement. The agreement provides, in relevant part, as follows:

"The Petitioner shall pay the sum of $2,000.00 per month to the Respondent as for *rehabilitative* maintenance, deductible as maintenance payment to the Petitioner and as income to the Respondent, as and for *rehabilitative* maintenance. Said sum shall begin on the 1st day of May, 1998 and shall continue bi-weekly thereafter each month following the entry of the judgment of Dissolution of Marriage, with said notice to the Petitioner's employer.

All maintenance shall be terminated upon the death of either party, or the Respondent's remarriage and/or cohabitation with a person of the opposite sex on a

-2-

continuing conjugal basis and *may be reviewable upon the Petitioner's retirement*."
(Emphases added.)

The agreement also includes a waiver, which states:

> "Except as otherwise specifically provided herein, the parties hereto waive and are forever barred from asserting any claims against one another, or in the property of one another, arising out of during their marriage, whether by way of maintenance, dower, pension homestead or otherwise."

¶ 4        In June of 2010 at the age of 59, Terry retired early from his job. He testified that he took the early retirement to secure more favorable postretirement healthcare benefits. Subsequently, he petitioned the court to terminate or reduce his maintenance payments to Sue.

¶ 5        Terry filed his first petition to terminate maintenance in August 2009. In December of that same year, Terry filed a motion to dismiss his petition because circumstances of his employment were such that he believed he would not be retiring for another year. Five months later, in May 2010, Terry again filed a petition to terminate or reduce the maintenance award. Sue filed her response and counterclaim to Terry's second petition, seeking a denial of Terry's motion to terminate and a petition for attorney fees in defending the proceedings. After a number of amended pleadings were filed by both parties, Terry filed a motion to strike or dismiss Sue's counterclaim on the basis that the waiver provision of the settlement agreement barred her from seeking permanent maintenance. After hearing oral arguments of the parties, the trial court issued an order on July 28, 2011, finding that Sue was barred from seeking permanent maintenance, but granting her 10 days' leave to amend her pleadings to state a cause upon which proper relief could be granted and preserving the previously scheduled evidentiary review hearing on September 2, 2011.

¶ 6        At the evidentiary hearing, Sue's treating physician of 10 years, Dr. Charles Bruyntjens, testified to Sue's condition over vigorous objection from Terry's counsel. Bruyntjens explained that myasthenia gravis is a disease where Sue's neuromuscular system does not connect, resulting in a decreased or total inability to swallow or eat, and a lack of functioning of the facial and voluntary muscles, including respiratory muscles. A decreased functioning in the respiratory muscles sometimes requires Sue to be hospitalized and placed on life support. Bruyntjens further testified that any strenuous activity, stress and infections can cause her muscles to work harder, and then give out entirely. This included any repetitive movement, including that of the type required at a doctor's office. In his medical opinion, Dr. Bruyntjens stated that Sue was unable to maintain any kind of gainful employment at the time, and her condition and symptoms would be ongoing for the rest of her life. Following the doctor's testimony, evidence was elicited from both Sue and Terry as to their respective incomes, assets and debts. The trial court terminated Terry's maintenance obligation in its October 12, 2011, order.

¶ 7        In reaching its conclusion, the court noted that Sue's diagnosis and prognosis were known to both parties nearly seven years before they entered into the marital settlement agreement. The court found that rehabilitative maintenance was necessarily temporary in nature, placing the burden on Sue, as payee, to "seek appropriate employment and the

capability to perform employment." The court referenced Sue's testimony, indicating her only efforts to become self-sufficient were in seeking employment within her previous profession as a nurse, ignoring the possibility of finding work she was capable of performing in some other position.

¶ 8       The court interpreted Sue's pleadings as a request to reform the contract and change the agreed upon rehabilitative maintenance to permanent maintenance nearly 13 years after the fact. The court declined such reformation, noting that in reaching an agreement specifically for rehabilitative maintenance, the parties ostensibly believed that Sue had a realistic likelihood of being able to work and improve her earning capacity before Terry retired. Moreover, the court would not allow reformation where the valid and enforceable marital settlement agreement contained a waiver provision prohibiting both parties from asserting additional claims for maintenance or property. It concluded that on the day the parties entered into the agreement, Sue made a knowing and voluntary relinquishment of all remaining rights against Terry for permanent maintenance or property.

¶ 9       The trial court ordered Terry to contribute to Sue's attorney fees, but found that nearly half of the attorney fees sought by Sue were for work that was unreasonable. Sue's counsel, as of the date of the review hearing on September 1, 2011, made a claim for $13,351.85. The trial court ordered that Terry should bear his own legal fees and costs in their entirety and should contribute exactly half, $6,675.93, toward Sue's legal fees and costs. The court acknowledged that Terry was the spouse with the greater ability to pay, but explained the billing by Sue's counsel for duplicative pleadings with only slight modifications was excessive and unreasonable.

¶ 10       Furthermore, the court took issue with counsel's pursuit of information pertaining to Terry's financial status. Specifically, the court ruled on Terry's motion to dismiss on July 28, 2011, finding that Sue was barred from pursuing permanent maintenance due to the waiver provision in the agreement. However, it held that Sue was still entitled to a review, and left the evidentiary hearing on Terry's amended motion to terminate on the docket for September 2, 2011, but emphatically stated that it would not consider an increase in the current maintenance award. The court found that billings by Sue's counsel after the July 28 order reflected continued research and work relating to Terry's ability to pay an increased maintenance amount, which the court deemed irrelevant and immaterial in light of its July 28 ruling.

¶ 11       This timely appeal followed.

¶ 12                                    ANALYSIS
¶ 13                                  I. Jurisdiction
¶ 14       As an initial matter, Terry alleges in a footnote that a threshold jurisdictional issue exists, insofar as Sue did not appeal the trial court's order of July 28, 2011, which found, as a matter of law, that she could not make any further claims for permanent maintenance. An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof. *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091, 1094 (2011).

¶ 15    While the July 28 order finds that the waiver provision of the marital settlement agreement "forever barred" Sue from "seeking permanent maintenance," the order also, *inter alia*, allowed Sue "to file a Second Amended Counterclaim with a proper remedy allowed by law." The suggestion that the July 28 order in any way settled the entire controversy between the parties is without merit. All issues between the parties were concluded by order dated October 12, 2011. Sue filed her notice of appeal on October 20, 2011. As such, this appeal is timely pursuant to Supreme Court Rule 303(a)(1). Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008).

¶ 16                              II. Marital Settlement Agreement

¶ 17    "The law is well settled that parties to an action for divorce may adjust between themselves the amount required for the future support of a wife by a husband, and that they may, if such a course is desired, voluntarily effect a settlement of their property interests." *James v. James*, 14 Ill. 2d 295, 305 (1958). When such agreements are made a part of the divorce decree, they become merged in such decree and are regarded as contracts between the parties, which, if fairly made and in good faith, will be accepted and enforced by the courts. See *Adler v. Adler*, 373 Ill. 361 (1940). A marital settlement agreement is construed as any other contract; the court must ascertain the parties' intent from the language of the agreement. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). When the terms of the agreement are unambiguous, they must be given their plain and ordinary meaning. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998). However, where the language is ambiguous, parol evidence may be used to decide what the parties intended. *In re Marriage of Hulstrom*, 342 Ill. App. 3d 262, 269 (2003). We review *de novo* an interpretation of a marital settlement agreement and a determination of whether the agreement's terms are ambiguous. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 426 (2005); *In re Marriage of Wassom*, 352 Ill. App. 3d 327, 330 (2004).

¶ 18    Terry and Sue undoubtedly contracted for maintenance. Our analysis, however, hinges not on how the parties labeled the award, but what they actually intended for it to be. "When the terms of a settlement agreement are susceptible to two different interpretations, the court must apply the interpretation that establishes the rational and probable agreement." *Dundas*, 355 Ill. App. 3d at 426.

¶ 19    Here, the trial court's recitation of the definition of "rehabilitative" is unpersuasive. We are of the view that if it walks like a duck and talks like a duck, it is a duck, notwithstanding the fact that it is wearing a cap and sunglasses. In honing in on the word "rehabilitative," the trial court locked in on the cap and sunglasses while refusing to look and see what was wearing them. Certainly, neither the parties nor the court could have reasonably believed that it would take Sue nearly 20 years to rehabilitate. At the time the judgment of dissolution was entered, Terry was 45 years old and the maintenance award was reviewable upon his retirement. If Terry had retired at 65, that would be 20 years of "rehabilitative" maintenance. Even in taking an early retirement at 59, Terry continued to pay Sue to "rehabilitate" for 14 years. If actions speak louder than words, then Terry's continued payment until his retirement screams that he did not view this as rehabilitative maintenance. The trial court's construction

of this maintenance agreement flies in the face of the traditional understanding of rehabilitative maintenance, where the underlying policy is "to sever all financial ties between the former couple in an expeditious, but just, manner and make each spouse independent of the other as soon as practicable." *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997) (citing *In re Marriage of Ward*, 267 Ill. App. 3d 35, 42 (1994)).

¶ 20        We find *In re Marriage of Dundas*, 355 Ill. App. 3d 423 (2005), and *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009), illustrative. In *Dundas*, the parties entered into a marital settlement agreement, whereby the wife was to have sole possession of the 1999 Dodge Durango for which there was still a significant outstanding debt. The agreement further provided that " 'Husband shall pay to Wife the amount of $200 per month as and for maintenance commencing December 2003 and continuing until the existing loan on her vehicle is paid in full.' " *Dundas*, 355 Ill. App. 3d at 424. In granting the petition to dissolve the parties' marriage, the trial court incorporated the settlement agreement and referred to the $200 monthly payments as maintenance, but clarified that the payments were essentially paying off the wife's car loan. Two months after the dissolution, the husband petitioned to terminate maintenance on the basis that the wife was now living with her boyfriend on a resident, continuing and conjugal basis. *Id.* at 425. The trial court denied the husband's petition, stating that after reviewing the record and examining the agreement, it was clear that it was the intent of the parties for the $200 payments to be part of the distribution of the marital estate, not maintenance. *Id.*

¶ 21        While the facts of *Dundas* are distinguishable from those of the case at bar insofar as the issue was property distribution versus maintenance, as opposed to rehabilitative maintenance versus permanent maintenance under the terms of a marital settlement agreement, the premise remains the same. Although the parties in a divorce action might have labeled monthly payments as maintenance, merely characterizing the payments as such does not mandate a conclusion that the payments were actually maintenance; a court must examine the substance of the agreement to determine its nature. *Id.* at 426. It logically follows that by labeling a maintenance award rehabilitative, it is not necessarily a foregone conclusion that it is rehabilitative when it otherwise bears all the hallmarks of traditional permanent maintenance.

¶ 22        Similarly in *Blum*, the parties agreed that the husband was to pay " 'unallocated maintenance and support for her and the minor children *** the sum of Five Thousand Dollars ($5,000.00) per month for a total of sixty-one (61) consecutive months.' " *Blum*, 235 Ill. 2d at 33. The marital settlement agreement further stated that the wife's right to receive maintenance and the husband's obligation to pay maintenance were reviewable after the 61-month period. There, our supreme court determined that "[n]onetheless, the marital settlement agreement provisions, when viewed together, suggest that Judy's maintenance was intended to be rehabilitative, without calling it rehabilitative *per se*. *** [T]he parties expressly agreed to review maintenance after 61 months." *Id.* at 35. In light of that, the supreme court found that the parties had agreed to rehabilitative maintenance subject to general review after 61 months; thus, the trial court "had discretion to continue maintenance without modification, to modify or terminate maintenance, or to change the maintenance payment terms." *Id.* at 36.

¶ 23       The holding in *Blum* supports the proposition that the label attached to a maintenance award has to be viewed contemporaneously with all other provisions of the marital settlement agreement to determine the parties' intent. Terry and Sue essentially described and agreed to a permanent maintenance award labeled as rehabilitative maintenance. Placing the adjective "rehabilitative" in front of the term "maintenance" does not necessarily render it rehabilitative. This is especially true when it was to continue without limitation for a contemplated period of 20 years, at which point it could be reviewed to determine if an increase, reduction, or complete termination was warranted. The parties knew that Sue's condition would deteriorate and that her likelihood of returning to the workforce in any meaningful capacity was slim. Indeed, Sue was already receiving social security disability benefits at the time of dissolution. In agreeing to such an award, it is clear the parties realized Sue would never be able to support herself or maintain the standard of living to which she had become accustomed during the marriage.

¶ 24       Perhaps even more telling is the fact that Terry and Sue did not agree on a fixed period when the award would terminate or become reviewable. Rehabilitative maintenance is generally paid for a fixed period after which it terminates, thereby presumably allowing the recipient to become "rehabilitated" and able to support herself. See *In re Marriage of Phillips*, 244 Ill. App. 3d 577 (1993) (affirming rehabilitative maintenance award of $235 per month for three years); *In re Marriage of Cheger*, 213 Ill. App. 3d 371 (1991) (affirming rehabilitative maintenance of $2,500 per month for the first three years, $1,500 per month for the next three years, and $1,000 per month for the final four years). This agreement contained no such provision. It did not state that after a certain amount had time lapsed, the parties would come back to court to determine if Sue had been diligently seeking appropriate employment in an effort to become self-sufficient. It did not state that Sue's maintenance award would automatically terminate after a definite number of years. Instead, the parties agreed that upon Terry's retirement (anticipated at the time to be nearly two decades later), they could petition the court to review the award and presumably make a determination about the parties' relative financial needs. Common sense dictates that an award of maintenance that would terminate only upon death, remarriage, or cohabitation and first reviewable on a date anticipated to be 20 years down the road is not, and was not, rehabilitative maintenance. This is especially true when the parties to the agreement knew that the recipient of the award has an incurable, progressively debilitating disease.

¶ 25       The trial court further based its decision to terminate Sue's maintenance award on the waiver provision contained within the marital settlement agreement. Specifically, it stated that based upon the record, the court had no choice but to find and conclude "[r]espondent that day made a knowing, voluntary, and intelligent relinquishment of any possible remaining right to claim permanent maintenance from Petitioner." Again, interpreting a marital settlement agreement is a question of law, which this court reviews *de novo*. *Wassom*, 352 Ill. App. 3d at 330. We find the trial court's characterization of the waiver provision erroneous based on the preceding analysis of the maintenance award and the terms of the agreement itself. The parties agreed to permanent maintenance, and such awards can be reviewed, modified and terminated. See *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 617 (2004). The waiver provision provides, "*[e]xcept as otherwise provided herein *** the*

-7-

parties are forever barred from asserting any claims against one another *** whether by way of maintenance." (Emphasis added.) The parties did, in fact, "otherwise provide" for maintenance within the marital settlement agreement. The waiver provision is inapplicable.

¶ 26 Accordingly, we find that the rational and probable interpretation of the agreement between the parties was one for a permanent maintenance award reviewable upon Terry's retirement. The trial court erred in terminating Sue's maintenance based upon the erroneous finding that the settlement contract provided only for rehabilitative maintenance. We reverse and remand for a review of maintenance considering all relevant statutory provisions.

¶ 27                                    III. Attorney Fees

¶ 28 We review a trial court's decision regarding attorney fees for an abuse of discretion. *In re Marriage of Plotz*, 229 Ill. App. 3d 389, 392 (1992). Generally, the party for whom legal services were rendered is responsible for those fees. *In re Marriage of Rushing*, 258 Ill. App. 3d 1057, 1064 (1993). However, section 508(a) of the Act (750 ILCS 5/508(a) (West 2010)) provides that a court may order an ex-spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in connection with the maintenance or defense of any proceeding under the Act. *Id.* A party seeking an award must show a financial inability to pay the fees and a corresponding ability of the ex-spouse to pay the fees. *Id.*; see also *In re Marriage of McFarlane*, 160 Ill. App. 3d 721 (1987).

¶ 29 Sue submitted a bill for legal fees totaling $13,351.85 for services extending from early 2009 through the evidentiary hearing on September 1, 2011. The trial court found that both parties filed repetitive pleadings with only slight changes that resulted in unreasonable fees. However, at the heart of the trial court's decision was the idea that Sue continued to pursue the theory that Terry should pay increased maintenance. It found that fees related to this line of inquiry were excessive given that in its July 28, 2010, order, it had clearly stated that it would not entertain a claim for permanent maintenance.

¶ 30 The trial court's analysis of the facts is misguided. The trial court's reliance on its earlier determination that Sue was barred from seeking permanent maintenance is incorrect, as discussed above. Per the parties' marital settlement agreement, Sue had been receiving permanent maintenance from Terry for the past 13 years. At the time of the evidentiary hearing, Sue was defending against Terry's motion to terminate and requesting a modification based on a substantial change in circumstances. Furthermore, the research and discovery conducted by counsel in regard to Terry's financial status at the time of the September 1 hearing was relevant to a meaningful review of both the maintenance and attorney fees issues. To find otherwise disregards the statutory directives of both sections 510(a-5) and 504(a), which provide, in part, that the court shall consider any impairment of the present and future earning capacity of either party; the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property; the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought; the property acquired and currently owned by each party after the entry of the judgment of dissolution of

marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; the needs of each party; and the age and the physical and emotional condition of both parties (750 ILCS 5/504(a), 510(a-5) (West 2010)). Section 503(j)(2) provides that any award of contribution for fees and costs to one party from the other party shall be based on the criteria for division of marital property under this section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under section 504 (750 ILCS 5/503(j)(2) (West 2010)).

¶ 31    The trial court can award attorney fees when the spouse seeking relief demonstrates: (1) financial inability to pay; and (2) the ability of the other spouse to pay. *In re Marriage of Edsey*, 199 Ill. App. 3d 39, 57 (1990). Sue, as the spouse seeking an award of attorney fees for defending against Terry's motion to terminate, squarely had the burden of proving to the trial court the disparity in the parties' ability to pay those fees. Per Terry's financial affidavit and testimony, his household income for the years 2009 and 2010 was $237,724 and $275,000, respectively. He receives three pensions, one totaling approximately $4,900 per month with a social security option, another pension benefit of $2,838.50 per month, and a third pension benefit of $91 per month. In total, Terry collects approximately $7,300 per month in pension benefits. In addition, he has a 401(k) with a balance of $278,679 as of May 2011, and owns 24 acres of farmland in Rockwood, Michigan, that he leases for $1,000 per year. Terry has remarried and testified that his wife, Mary Olson, earns almost $74,000 per year and contributes to the household expenses. He estimated their total monthly living expenses at $4,405. It is worth noting that Terry's financial disclosure statement, filed with the circuit court in January 1998 prior to the parties' dissolution, stated a gross monthly income of $5,837.83. Terry's financial situation has greatly improved, as he is now receiving close to $1,500 more per month and possesses significantly more assets than he did at the time of the dissolution.

¶ 32    By contrast, Sue receives $1,117 in social security disability benefits and a pension benefit of $181 per month. Excluding maintenance payments of $2,000 per month, Sue's net monthly income is roughly $1,200. Her estimated monthly expenses are $3,431, a significant portion of which is for out-of-pocket medical expenses and insurance. Even including maintenance, Sue's monthly living expenses cannot be covered by her income. Moreover, the evidence elicited from Sue's treating physician, Dr. Charles Bruyntjens, regarding her condition was uncontroverted–Sue is unable to maintain any kind of gainful employment and her disease will be an ongoing issue for the rest of her life.

¶ 33    A trial court abuses its discretion in not awarding attorney fees under section 508(a) of the Act when the evidence reveals a great disparity in the parties' actual earnings and earning capacity. *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 832 (1992); *In re Marriage of Gable*, 205 Ill. App. 3d 696, 700 (1990). The trial court acknowledged the obvious great disparity between Sue's and Terry's actual earnings and their earning capacities. Sue depends solely on social security disability benefits and maintenance payments, and her earning capacity is virtually eliminated due to her disability. A thorough review of the record makes clear that Sue has proven she lacks the ability to pay, and conversely, Terry is more than able. Sue is not required to show destitution in order for the trial court to award her attorney fees. See *Gable*, 205 Ill. App. 3d at 700. The trial court, nonetheless, ordered Terry to pay only

half of Sue's fees, predominately on the basis that her claim for increased maintenance was "nonmeritorious." To the contrary, it was imperative for Sue's counsel to pursue information regarding Terry's finances in order to have both a meaningful review of the maintenance award and the petition for attorney fees. The trial court abused its discretion in ruling on Sue's request for attorney fees. Accordingly, we reverse and remand for a redetermination of the proper amount of an award for attorney fees after a meaningful review of the maintenance pursuant to the relevant statutory factors.

¶ 34                           CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the circuit court of Rock Island County is reversed and this matter remanded for further proceedings consistent with this opinion. In the interim, Sue's maintenance award is reinstated and is retroactive to the date of termination by the trial court.

¶ 36    Reversed and remanded.