2022 IL App (1st) 201384-U

FIFTH DIVISION
June 30, 2022

No. 1-20-1384

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In* re MARRIAGE OF: | ) | Appeal from the |
| BEATRIX RAYMER | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 12 D 4515 |
| | ) | |
| RONNEY RAYMER, | ) | Honorable |
| | ) | David E. Haracz, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's judgment denying the appellant's motion to terminate maintenance and granting a modification of the maintenance award are affirmed; this court lacks jurisdiction to determine whether the 2013 default judgment was void.

¶ 2    The petitioner-appellee, Beatrix Raymer[1], and the respondent-appellant, Ronney Raymer,

were married on September 8, 1990. On May 8, 2012, Ms. Raymer filed a petition for the

_____

[1]While Beatrix Raymer's maiden name is Beatrix Fieten and that name is intermittently used in the brief, we will refer to her by the name in the caption of the petition, which is her married name.

dissolution of the marriage in the circuit court of Cook County. On September 13, 2012, when Mr. Raymer failed to appear or otherwise plead, the circuit court entered a default order against Mr. Raymer, establishing the court's jurisdiction. On March 7, 2013, again without Mr. Raymer having appeared or otherwise pled, the court entered a judgment dissolving the marriage and granting Ms. Raymer an award of maintenance for a period of 120 months. On January 11, 2018, Mr. Raymer filed a motion to vacate the default judgment, which was denied by the trial court. On July 1, 2019, Mr. Raymer filed a motion to modify or terminate the award of maintenance. On November 23, 2020, the trial court entered an order modifying the prior judgment entered on March 7, 2013. On appeal, Mr. Raymer argues that the trial court erred by: (1) ruling that the default judgment was not void; (2) not terminating maintenance to Ms. Raymer, despite the rehabilitative purpose for maintenance being met; (3) not terminating maintenance to Ms. Raymer despite the presence of statutory cohabitation; and (4) entering the November 23, 2020, order, which changed the retroactive date of the modified maintenance payments. Ms. Raymer did not file an appellate brief in this court. However, as Mr. Raymer, the appellant, has filed a cogent brief, along with a record of the proceedings in the circuit court, we are able to resolve this case on the merits. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                BACKGROUND

¶ 4      On September 8, 1990, the parties were married. On May 8, 2012, Ms. Raymer filed a petition for the dissolution of the marriage. On May 18, 2012, Mr. Raymer was served with the summons and complaint for the dissolution of the marriage via a special process server. On August 29, 2012, Ms. Raymer filed a motion for default judgment. On September 13, 2012, the trial court granted Ms. Raymer's motion for default, establishing that it had jurisdiction over Mr. Raymer, because he failed to appear after receiving proper notice of the proceedings. The court then set the

matter for a prove-up divorce hearing[2]. While not clear from the record, at some time between September 13, 2012, and February 1, 2013, the matter was transferred from the trial calendar to the circuit court's reconciliation calendar. On February 1, 2013, Ms. Raymer filed a motion to have the case removed from the reconciliation calendar and transferred back to the trial calendar to be set for a prove-up hearing on February 11, 2013. The motion attached a notice, which was allegedly mailed via overnight Federal Express delivery to Mr. Raymer on that date. On February 11, 2013, a new default order was entered against Mr. Raymer for his failure to appear after allegedly receiving notice, and the matter was set for a prove-up hearing on March 7, 2013. On March 7, 2013, again without Mr. Raymer present, the trial court entered judgment in Ms. Raymer's favor, dissolving the marriage and awarded Ms. Raymer the marital residence and $1,500 a month in maintenance payments for 120 months. The parties' joint bank account was to be separated and divided equally between them and each party was awarded his or her own personal property.

¶ 5    Four years and nine months later, on December 12, 2017, Ms. Raymer filed a motion for a rule to show cause against Mr. Raymer[3], alleging that he had not made any maintenance payments to her. On January 11, 2018, Mr. Raymer filed a motion to vacate the 2013 default judgment, alleging that Ms. Raymer was granted the default judgment by fraud. In the motion, Mr. Raymer alleged that he did not have knowledge of the default judgment until February 6, 2017. He further alleged that he and Ms. Raymer had continued living together as husband and wife after she filed the divorce petition and continued doing so until December 2016. This was during the time that

---

[2]In a prove-up hearing, the petitioner presents evidence which must be sufficient to satisfy the court, because as in this case, the respondent may not be participating in the proceeding despite having been served with the summons and complaint.

[3]A rule to show cause is the process by which a party brings another party's failure to comply with a court's orders to the court's attention.

she was before the court getting the default divorce judgment without his knowledge. He asserted that, after the petition for dissolution of the marriage was initially filed, he and Ms. Raymer attempted to reconcile and their divorce case was transferred to the circuit court's reconciliation calendar. He further asserted that they continued living together in the marital residence during the period of reconciliation. However, subsequently and without his knowledge, the case was removed from the reconciliation calendar. It proceeded, without notice to him, to a default judgment, while he and Ms. Raymer were still living in the marital residence as husband and wife. He claimed that Ms. Raymer did not inform him that she was proceeding with the divorce, although they were living together and attempting to reconcile.

¶ 6    According to the record before this court, on March 27, 2018, Ms. Raymer filed a response to the motion to vacate, denying the allegations. Her response stated that, although she lived in the same house with Mr. Raymer through December 2016, they lived in different bedrooms and were separated. In the response, she also claimed that on February 1, 2013, she mailed to Mr. Raymer, via overnight Federal Express delivery, the motion to remove the case from the reconciliation calendar and schedule a prove-up hearing, as well as the notice of motion. There is no evidence in the record before us to verify this assertion. On May 29, 2019, the trial court denied Mr. Raymer's motion to vacate the 2013 default judgment and found that it was not void. Subsequently, Ms. Raymer withdrew her motion for a rule to show cause. Mr. Raymer did not challenge nor seek to have the trial court reconsider its ruling, denying his motion to vacate the default judgment entered on March 7, 2013.

¶ 7    On July 1, 2019 (approximately six years and four months after the 2013 default judgment was entered), Mr. Raymer filed a motion to modify or terminate maintenance, alleging that Ms. Raymer's income had changed significantly since the 2013 default judgment. He further alleged

that she was in a cohabiting, conjugal relationship with another individual, thereby relieving him of the obligation to make the maintenance payments.

¶ 8     On February 27, 2020, the trial court conducted a hearing on Mr. Raymer's motion to modify or terminate maintenance. Mr. Raymer and Ms. Raymer both testified at the hearing. Mr. Raymer testified that Ms. Raymer did not move out of their marital home until December 2016, and further, he did not learn about the divorce judgment, which had been entered in March 2013, until February 2017. The testimony established that during the marriage and until the time that Ms. Raymer moved out of the marital home, she paid the bills and mortgage out of their joint bank account, into which they both deposited their paychecks. Mr. Raymer testified that although the marital home was to be awarded to Ms. Raymer, he lived in the home after she moved out in December 2016, until February 2020, when the home went into foreclosure. He admitted that he did not make any mortgage payments after Ms. Raymer left the home. He further testified that Ms. Raymer was covered by his health insurance during the years after the divorce while they were living together in the marital home as husband and wife. He asserted that Ms. Raymer's actions during that period of time did not indicate that they were divorced. He reiterated that he was unaware that the marriage had been dissolved. Mr. Raymer testified that he earned approximately $72,000 in 2019.

¶ 9     Ms. Raymer testified that when she left the marital residence in December 2016, she moved in with her brother for a week. At some point, Mr. Raymer came to her brother's home making threats. This caused stress for her brother, and he recommended that she move into the home of his friend, Ron Swacker. She testified that she was not in a dating or conjugal relationship with Mr. Swacker, despite the fact that he paid for both of them to vacation in Mexico in October 2019. She also testified that they occasionally went out to dinner and spent time together during holidays.

Ms. Raymer also stated that during 2013, she earned about $24,000. However, in 2015, she moved into a management position and by 2019, she was earning approximately $38,000.

¶ 10    On April 23, 2020, the trial court entered its order modifying the maintenance award from $1,500 to $345 per month for the remainder of the 120-month period. Its ruling was made according to the maintenance guideline calculation based on the parties' incomes. The modified payments to Ms. Raymer were to begin on July 1, 2019, the date of the filing of Mr. Raymer's petition for modification of maintenance. However, the court stated that, while the 120-month payment period began on March 7, 2013, the date of the original default judgment, Mr. Raymer would not be obligated to make maintenance payments for the time between the default judgment through the end of 2016 when Ms. Raymer left the marital home. The court reasoned that the parties' marital standard was maintained during the time that they remained living together and were sharing a bank account. The court found that Ms. Raymer's financial situation had changed substantially since 2013, prompting the need for the modification of maintenance. The court also stated in its order: "Mr. Raymer credibly testified that he did not have knowledge of the divorce judgment until February 2017. In fact, after the prove-up, [Ms. Raymer] returned to the marital residence and lived as husband and wife with Mr. Raymer through the end of 2016." However, the court also found that Mr. Raymer had not proved that Ms. Raymer was in a cohabitating, conjugal relationship so as to warrant termination of maintenance in its entirety.

¶ 11    On May 22, 2020, Mr. Raymer filed a motion to reconsider, arguing that: (1) maintenance should be terminated since the goal of rehabilitation had been achieved; (2) the modified maintenance amount should revert to January 2018, the date when he filed the petition to vacate the default judgment; (3) maintenance should be terminated because Ms. Raymer was in a cohabitating, conjugal relationship; and (4) the trial court's April 2020 order which included

language finding that Mr. Raymer did not know about the 2013 default judgment until February 2017 showed that the default judgment was void. On July 31, 2020, the trial court modified its ruling and found that the modified maintenance payments were retroactive to January 1, 2017, the first month after Ms. Raymer vacated the marital home, instead of July 1, 2019. The court's other rulings remained unchanged.

¶ 12    On August 26, 2020, Ms. Raymer filed a motion to reconsider, arguing that the trial court erred by ordering that the retroactive maintenance payments should revert to January 1, 2017, instead of July 1, 2019. On November 23, 2020, the court vacated its July 31, 2020, order in its entirety, and reinstated its order of April 23, 2020. That ruling ordered that the modified maintenance payments began on July 1, 2019, the date on which Mr. Raymer filed his petition for modification of maintenance and gave notice to Ms. Raymer. On December 22, 2020, Mr. Raymer filed his notice of appeal.

¶ 13                                    ANALYSIS

¶ 14    Before addressing the merits, we have an obligation to consider whether this court has jurisdiction to consider this appeal. Although jurisdiction was not raised by the parties, "courts of review have an independent duty to consider jurisdiction." *People v. Lewis*, 234 Ill. 2d 32, 36 (2009). Jurisdiction grants a court the power to interpret and apply the law. *In re M.W.*, 232 Ill. 2d 408, 414 (2009).

¶ 15    Section 2-1203 of the Code of Civil Procedure states that in non-jury trials, a party may "within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203 (West 2016). If a motion to reconsider is not filed after 30 days, the trial court loses jurisdiction to

consider the motion. *Peraino v. County of Winnebago*, 2018 IL App (2d) 170368, ¶ 15.

¶ 16    In this case, one of the issues raised by Mr. Raymer, before this court on appeal, challenges the 2013 default divorce judgment. Mr. Raymer places great weight on the trial court's finding in its April 23, 2020, order in which the court stated: "Mr. Raymer credibly testified that he did not have knowledge of the [default] divorce judgment until February 2017." Mr. Raymer essentially tries to use the trial court's language to attack the 2013 default divorce judgment claiming that it is void due to Ms. Raymer hiding it from him and misleading the court. We note that this is his second attempt to get the default divorce judgment vacated for voidness. While a party may challenge a void judgment at any time (*Department of Healthcare and Family ex rel Sanders v. Edwards*, 2022 IL App (1st) 210409, ¶ 42), Mr. Raymer challenged the voidness of the 2013 default judgment in a motion to vacate, which he filed on January 11, 2018. On May 29, 2019, the trial court denied his motion to vacate its ruling. Mr. Raymer did not file a motion within 30 days of that ruling asking the trial court to reconsider its ruling. Instead, while he clearly could have challenged the court's ruling, he chose not to do so and continued to litigate other post-divorce matters. It was not until December 22, 2020, that he sought to challenge the court's ruling of May 29, 2019. That is 17 months after the order was entered and well outside the time allowed by the statute. As such, by the time he sought to challenge the court's ruling, the trial court had lost jurisdiction to reconsider its ruling. In turn, this court, likewise, does not have jurisdiction to consider the trial court's ruling on the voidness of the 2013 default judgment. *Peraino*, 2018 IL App (2d) 170368, ¶ 15. Notwithstanding that we may have come to a different conclusion than the trial court, when the issue was properly presented to the trial court, Mr. Raymer's failure to make a timely challenge to the trial court's ruling on his motion to vacate the 2013 divorce judgment, is fatal to jurisdiction regarding that claim.

¶ 17    Regarding the other issues in this appeal, (the April 23, 2020, and November 23, 2020, judgments modifying maintenance), we note that we have jurisdiction to consider those issues, as Mr. Raymer filed a timely notice of appeal following those judgments. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017). We now turn to the merits of those issues.

¶ 18    On appeal, Mr. Raymer argues that the trial court erred by: (1) not terminating maintenance since the rehabilitative purpose of maintenance had been met; (2) not terminating maintenance given the presence of statutory cohabitation which negated his maintenance obligation; and (3) entering the November 23, 2020, order, which changed the date on which the modified maintenance payments would begin. We take each issue in turn.

¶ 19    Mr. Raymer first argues that the trial court should have terminated his maintenance obligation since the goal of rehabilitative maintenance for Ms. Raymer had been achieved. He cites *In re Marriage of Cantrell*, 314 Ill. App. 3d 623 (2000), and *In re Marriage of Frus*, 202 Ill. App. 3d 844 (1990), in support.

¶ 20    The four common types of maintenance are: "(i) permanent maintenance (indefinite in duration); (ii) rehabilitative maintenance for a fixed term (terminates at the term's end or the occurrence of some event); (iii) rehabilitative maintenance (subject to a set review date); and (iv) maintenance in gross (specific, nonmodifiable sum, usually in lieu of property)." *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 84. "A spouse should not be required to lower the standard of living established in the marriage as long as the payor spouse has sufficient assets to meet his needs and the needs of his former spouse." *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1044 (2008). Maintenance can only be modified or terminated when there has been a substantial change in circumstances, which means "that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay maintenance has changed." *Shen*, 2015 IL App (1st) 130733, ¶

132.

¶ 21    "The decision whether to modify or terminate maintenance is within the sound discretion of the trial court, and we will not disturb the trial court's decision absent an abuse of that discretion." *Cantrell*, 314 Ill. App. 3d at 629-30. The abuse of discretion standard is highly deferential to the trial court. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23. A trial court "abuses its discretion when its ruling 'is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Taylor*, 2011 IL App (1st) 093085, ¶ 23 (quoting *People v. Caffey*, 205 Ill. 2d 52, 89 (2001)).

¶ 22    First, looking at the fixed term of the maintenance in this case and the surrounding circumstances of its granting by the trial court, it can reasonably be determined to be rehabilitative maintenance for a fixed term, although the trial court's order did not expressly state such. In order to terminate maintenance payments to Ms. Raymer prior to the end of 120 months, Mr. Raymer had to prove that there was a substantial change in circumstances, which allowed his former spouse to be able to support herself or that he was unable to pay maintenance any longer. *In re Marriage of Bolte*, 2012 IL App (3d) 110791, ¶ 24. On appeal, Mr. Raymer argues that Ms. Raymer is now able to support herself and thus no longer needs rehabilitative maintenance.

¶ 23    In both cases cited by Mr. Raymer, the former wife, who was receiving maintenance, was not employed at the time of the dissolution of the marriage. *Cantrell*, 314 Ill. App. 3d at 630; *Frus*, 202 Ill. App. 3d at 846. Those cases are inapposite to the situation in this case. Specifically, in those cases, the evidence showed that the former wife had been fully rehabilitated by the maintenance payments, as was the goal. Those are not the same circumstances here where Ms. Raymer was employed at the time of the maintenance award, and further, her income has only increased approximately $14,000 in 6 years. Additionally, we note that the marital home which

she was awarded went into foreclosure. Mr. Raymer admits he had not made *any maintenance payments* to Ms. Raymer prior to 2019, and so it would be irrational to say that Ms. Raymer was rehabilitated by maintenance payments that had never been made. In the hearing, the trial court heard testimony regarding the income of both parties in 2019. The court also heard evidence that neither party was paying for upkeep of the marital home, and it was in foreclosure. Given those facts, the court modified maintenance payments to Ms. Raymer from $1500 to $345 per month. Clearly, the trial court, after being fully advised of the financial situation of Ms. Raymer, concluded that the significantly reduced maintenance amount to Ms. Raymer was appropriate and supported by the facts. Similarly, the court concluded that Mr. Raymer could afford the significantly reduced maintenance payments. Under these facts and circumstances and the significant reduction in maintenance, we cannot say that the trial court abused its discretion by not terminating maintenance in its entirety. See *Taylor*, 2011 IL App (1st) 093085, ¶ 23. We, therefore, reject this argument by Mr. Raymer.

¶ 24    Next, Mr. Raymer argues the trial court erred by not terminating maintenance as the tenets of statutory cohabitation, which nullify his obligation to pay maintenance, had been met. He claims that the evidence shows Ms. Raymer was cohabitating with Mr. Swacker and therefore, maintenance payments should be terminated on that basis.

¶ 25    Section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) states, "[u]nless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated *** if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." 750 ILCS 5/510(c) (West 2018). When a petitioner asserts that the party receiving maintenance is cohabiting with another person, there are numerous factors courts may consider.

> "In determining whether the petitioner has met his or her burden, a court looks to the totality of the circumstances and considers the following nonexhaustive list of factors: (1) the length of the relationship; (2) the amount of time spent together; (3) the nature of activities engaged in; (4) the interrelation of personal affairs (including finances); (5) whether they vacation together; and (6) whether they spend holidays together." *In re Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40.

A reviewing court will not upset the trial court's ruling on a petition to terminate maintenance based on the existence of a cohabiting, conjugal relationship "unless that ruling is against the manifest weight of the evidence." *Miller*, 2015 IL App (2d) 140530, ¶ 40. "A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the decision is unreasonable, arbitrary, or not based on the evidence." *Miller*, 2015 IL App (2d) 140530, ¶ 40.

¶ 26 In this case, in its April 23, 2020, order, the trial court stated that, while Mr. Raymer had made a compelling argument, *he had not met his burden of proving* a continuing, conjugal relationship between Ms. Raymer and Mr. Swacker. The cohabitation factors outlined in *Miller*, 2015 IL App (2d) 140530, ¶ 40, are just some of the considerations that a trial court may consider in reaching its conclusion.

¶ 27 Looking at the first factor, it is not clear from the evidence that Mr. Swacker and Ms. Raymer were in an intimate relationship, or a pseudo husband-wife relationship as would be required to meet the burden of proof. It is true that they went on one vacation together for which Mr. Swacker paid, but that is only one factor for the court to consider in the context of the relationship. Repeatedly during her testimony, Ms. Raymer stated she had a "friendship" and a "landlord-tenant" relationship with Mr. Swacker. Looking at the totality of the circumstances, we cannot say that the trial court's conclusion is unreasonable, such that no reasonable person would

come to that conclusion based on that evidence. See *Miller*, 2015 IL App (2d) 140530, ¶ 50 (stating that the ultimate question a court seeks to answer regarding cohabitation, after considering the common law and the totality of the circumstances, is whether the former spouse has entered into a *de facto* marriage with another individual). As such, in this case, Mr. Raymer's argument that the cohabitation factors have been met fails and the trial court did not err declining to terminate maintenance on that basis.

¶ 28    Finally, Mr. Raymer argues the trial court erred by finding that the modified maintenance payments should begin retroactively on July 1, 2019, instead of January 1, 2017. He argues that the trial court was correct in its July 31, 2020, order when it interpreted *In re Marriage of Abrell*, 386 Ill. App. 3d 718, 732-33 (2008), and applied the maintenance payments retroactively from January 1, 2017.

¶ 29    Section 510(a) of the Act states, "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). It is within the trial court's discretion to determine the effective date of modified maintenance payments. *Abrell* 386 Ill. App. 3d at 732.

¶ 30    We are guided in our analysis in *Abrell*, 386 Ill. App. 3d at 732-33, in which a motion for modification of maintenance was filed, and the appellate court was tasked with discerning the date on which the modification was to retroactively begin. On appeal, the Fourth District of this court determined that the modification began on the date that the respondent of the motion to modify received notice of the motion. *Abrell*, 386 Ill. App. 3d 718, 732-33.

¶ 31    Here, the parties became aware of the possible need for a modification of maintenance when Mr. Raymer filed his motion to modify maintenance and Ms. Raymer received notice. The

motion, filed on July 1, 2019, was sent to Ms. Raymer electronically on the same date. As such, the modification was correctly applied retroactively to July 1, 2019, the date which Ms. Raymer *received notice* of the motion to modify maintenance payment. Starting the modified payments from the time at which Ms. Raymer had notice is reasonable. Accordingly, we cannot say the trial court erred in its ruling that the retroactive modification began on July 1, 2019.

¶ 32                                     CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.