No. 3--10--0831

Opinion filed March 21, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| ROSEMARIE A'HEARN, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 05--D--884 |
| | ) | |
| MICHAEL A'HEARN, | ) | Honorable |
| | ) | Dinah J. Archambeault, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
    Justice Carter concurred in the judgment and opinion.
    Justice McDade concurred in part and dissented in part, with opinion.

**OPINION**

The respondent, Michael A'Hearn, appeals from an order below dismissing his petition for temporary and permanent custody of the parties' 14-year-old son Michael (Mikey) A'Hearn. Michael argues that the trial court abused its discretion by barring all of his witnesses from testifying. We reverse and remand.

FACTS

Michael and Rosemarie (Rose) A'Hearn were married in 1982 and divorced in 2006. At the time of their divorce, the parties agreed to joint custody of Mikey, with Michael awarded visitation consistent with the Will County guidelines. On May 1, 2008, Michael filed two petitions for rule to show cause. One petition alleged that Rose had interfered with Michael's visitation, and the other alleged that Rose had engaged in immoral behavior by frequently inviting men over and by taking Mikey across state lines to spend a weekend with a man she had met on the Internet. The parties attended mediation on June 5, 2008, and reached an agreement as to communication and visitation, but not custody.

Approximately one month later, Michael filed his petition to modify custody. Michael's petition did not mention the petitions for rule to show cause or the fact that he had allegedly been denied visitation. Instead, Michael sought a change of custody because he was "better able to offer a stable and nurturing environment, emotionally and physically, for [Mikey]" and because Rose had exhibited "erratic and irrational emotional behavior." Michael also filed a motion requesting the court to appoint an evaluator under section 604(b) of the Illinois Marriage and Dissolution of Marriage Act, which the court allowed. 750 ILCS 5/604(b) (West 2008). The court appointed Dr. Mary Gardner, who

2

recommended that residential custody of Mikey be transferred to Michael.

This matter was originally scheduled for trial on December 14, 2009, but on November 23, 2009, the trial was reset for May 17, 2010.  Michael's attorney was also informed on November 23, 2009, that he had to answer the outstanding discovery and provide a list of witnesses by February 1, 2010. Michael did not comply with the discovery order, and on May 4, 2010, Rose filed a motion to bar witnesses.  Michael finally disclosed his witnesses at 4:50 p.m. on May 12, 2010.

Rose's motion to bar witnesses was heard on May 13, 2010. When asked to explain his behavior, Michael's attorney stated that he had completed the Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2007) disclosures on March 24, 2010, but that for some unexplained reason his assistant had failed to send them out.  After finding that Michael's late disclosures would be prejudicial to Rose and that Michael had violated both a court order and the supreme court rules, the trial court sanctioned Michael by barring his witnesses.  The court then dismissed Michael's petition for custody with prejudice after finding that he could not prevail on his petition without witness testimony. Shortly thereafter, Rose filed a petition to extend unallocated

3

maintenance and family support.  On September 23, 2010, the trial court denied Michael's motion to reconsider, and he appealed the dismissal of his custody petition.  Rose's petition for extension of maintenance and family support remained pending before the trial court at the time of appeal.

ANALYSIS

On appeal, Michael argues that the trial court abused its discretion by barring his witnesses as a discovery sanction. Michael also claims that the trial court misapplied Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) because section 604(b) evaluators are not witnesses that have to be disclosed under the rule.  However, before we can reach the merits of Michael's argument, first we must decide whether we have jurisdiction over the matter.

I. Jurisdiction

The posture of this case raises a question as to whether the trial court's September 23, 2010, order constituted a final and appealable order pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and, therefore, whether we have jurisdiction over this case.  Specifically, because Michael's petitions for rule to show cause and Rose's petition to extend maintenance were pending in the trial court, the trial court's order did not

4

resolve all issues between the litigants in this case. Although the parties did not address the issue of our jurisdiction, we have an independent duty to consider it. Vowell v. Pedersen, 315 Ill. App. 3d 665 (2000). Our review is de novo. In re Marriage of Gutman, 232 Ill. 2d 145 (2008).

An order is final and appealable if it " 'terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " Gutman, 232 Ill. 2d at 151 (quoting R.W. Dunteman Co. v. C/G Enterprises, Inc., 181 Ill. 2d 153, 159 (1998)). A final order that disposes of fewer than all the parties' claims is not appealable absent an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding that there is no just reason to delay the appeal. Gutman, 232 Ill. 2d 145. A claim is " 'any right, liability or matter raised in an action.' " Gutman, 232 Ill. 2d at 151 (quoting Marsh v. Evangelical Covenant Church of Hinsdale, 138 Ill. 2d 458, 465 (1990)).

We note at the outset that the case law on this issue is currently inconsistent and difficult to reconcile. Much of the inconsistency stems from whether postdissolution petitions are properly characterized as new claims within a single action or as

5

multiple actions.  Compare In re Marriage of Carr, 323 Ill. App. 3d 481 (1st Dist. 2001), with In re Marriage of Duggan, 376 Ill. App. 3d 725 (2d Dist. 2007).  As Rule 304(a) states, a final order that disposes of fewer than all of the claims in one action is not appealable unless the trial court makes a written finding that there is no just reason to delay enforcement or appeal or both.  Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).  Thus, postdissolution petitions or motions that are separate actions are independently appealable upon their resolution, whereas filings that are part of a larger action are only appealable when the larger action is resolved, absent a Rule 304(a) finding.

In In re Custody of Purdy, 112 Ill. 2d 1 (1986), our supreme court held that a father's postdissolution motion for custody constituted a separate cause of action.  The court held that the trial court's ruling on the motion constituted a final and appealable order despite the fact that the mother's visitation schedule for summer vacation was still undecided.  Purdy, 112 Ill. 2d 1.  As opposed to a dissolution action, which presents multiple issues such as property, maintenance, custody, and child support, the court noted that the issue of custody raised in a postdissolution motion was a separate matter and was not ancillary to any other issue.  Purdy, 112 Ill. 2d 1.  The court

6

ruled that, "[a]n order for a change of custody in this context constitutes a final, and therefore appealable, order." Purdy, 112 Ill. 2d at 5.

Since the decision in Purdy, a split has developed among the appellate courts regarding whether postdissolution petitions are construed as new actions or as new claims within the original dissolution proceeding. See, e.g., In re Marriage of Ehgartner-Shachter, 366 Ill. App. 3d 278 (2006) (describing the split between the First and Second Districts regarding jurisdiction of postdissolution proceedings). In 2001, the First District of the Appellate Court decided In re Marriage of Carr, 323 Ill. App. 3d 481. In Carr, the husband filed a motion to reduce child support after one of his children from the marriage turned 18. Carr, 323 Ill. App. 3d 481. While the child support matter was pending, the wife filed a petition for attorney fees. Carr, 323 Ill. App. 3d 481. After the trial court ruled in the husband's favor on his motion, the wife filed a petition for rule to show cause against the husband for failure to pay college expenses. Carr, 323 Ill. App. 3d 481.

The First District held that, despite the fact that petitions were still pending in the trial court, the trial court's order granting the husband's motion to reduce child

7

support was final and appealable. Carr, 323 Ill. App. 3d 481. In so reasoning, the court noted that the wife's petition for fees had nothing to do with the original dissolution proceeding, which had taken place 10 years prior. Carr, 323 Ill. App. 3d 481. In addition, the trial court's order modifying child support was separate from and unrelated to either the petition for fees or the rule to show cause. Carr, 323 Ill. App. 3d 481.

In contrast, the Second and Fourth Districts have held postdissolution petitions constitute new claims within the same action and therefore Rule 304(a) certification is required in order for the appellate court to exercise jurisdiction. In re Marriage of Alyassir, 335 Ill. App. 3d 998 (2d Dist. 2003); In re Marriage of Gaudio, 368 Ill. App. 3d 153 (4th Dist. 2006). In particular, the Second District in Duggan, 376 Ill. App. 3d 725, explained in dicta why it did not consider postdissolution petitions to be separate actions. The Duggan court relied heavily on In re Marriage of Kozloff, 101 Ill. 2d 526 (1984), to argue that postdissolution proceedings were a continuation of the original dissolution action. Duggan, 376 Ill. App. 3d 725.

In Kozloff, the parties began filing a series of motions shortly after the divorce became finalized. Kozloff, 101 Ill. 2d 526. All of these petitions were heard by one particular

judge. In an apparent attempt to avoid that judge, the husband argued that he was entitled to a change of venue as of right on his petition to terminate maintenance because each postdissolution petition constituted a new action. Kozloff, 101 Ill. 2d 526. Our supreme court disagreed with the husband's argument and stated:

> "Under the [proposed] rule, however, a change of venue can be sought on any post-decree petition if the litigant is dissatisfied with the judge's prior rulings on other, related petitions despite the fact that all of the petitions emanate from the same dissolution proceedings. Too, if after one change of venue on a particular petition the litigant is still unhappy, he could replace the second judge simply by voluntarily dismissing his petition and refiling a substantially similar petition and another motion for change of venue." Kozloff, 101 Ill. 2d at 531.

Moreover, the Duggan court found it significant that in Purdy the trial court had made a Rule 304(a) finding that there was no just reason to delay the appeal. Duggan, 376 Ill. App. 3d 725. Thus, the court reasoned that Purdy merely stands for the proposition that judgment on a postdissolution petition may be

9

appealed, but only with a Rule 304(a) finding.  Duggan, 376 Ill. App. 3d 725.

The special concurrence in Duggan advocated following the Carr approach.  Duggan, 376 Ill. App. 3d at 746 (O'Malley, J., specially concurring).  Justice O'Malley read Kozloff narrowly and argued that its holding was limited to venue.  Duggan, 376 Ill. App. 3d at 748 (O'Malley, J., specially concurring).  He suggested that extending Kozloff beyond venue was incorrect because such a reading conflicted with Purdy.  Duggan, 376 Ill. App. 3d at 749 (O'Malley, J., specially concurring).  Justice O'Malley reasoned that "[i]f, as the majority asserts, a postdecree petition is actually a continuation of the original dissolution proceeding, then there never is a postdecree petition," and Purdy "would become wholly superfluous." (Emphasis added.)  Duggan, 376 Ill. App. 3d at 752 (O'Malley, J., specially concurring).

The supreme court's latest decision in Gutman, 232 Ill. 2d 145, did not resolve this conflict.  In Gutman, the court held that the trial court's order terminating maintenance was not a final and appealable order because the wife had a petition for rule to show cause pending in the trial court.  Gutman, 232 Ill. 2d 145.  The parties obtained a divorce in 1996, but the issue of

maintenance was reserved for the trial court. Gutman, 232 Ill. 2d 145. In 1999, the court ordered the husband to pay maintenance for three years. Gutman, 232 Ill. 2d 145. Approximately three years later, the wife filed a motion seeking to continue maintenance payments, and the husband filed a motion seeking to terminate maintenance. Gutman, 232 Ill. 2d 145. After both motions were filed, the wife filed a petition for indirect civil contempt, alleging that the husband had stopped making maintenance payments in violation of the trial court's order. Gutman, 232 Ill. 2d 145. The trial court issued a rule to show cause against the husband. Gutman, 232 Ill. 2d 145. After the wife failed to appear for a hearing, the trial court granted the husband's motion to terminate maintenance. Gutman, 232 Ill. 2d 145.

The appellate court held that, although the wife's contempt petition was a "part" of her overall action, jurisdiction was proper because the petition did not raise "a claim for relief." (Internal quotation marks omitted.) Gutman, 232 Ill. 2d at 151. The court reasoned that, because the contempt petition constituted a special, separate, proceeding, the trial court's order terminating maintenance was a final and appealable order. Gutman, 232 Ill. 2d 145. Our supreme court disagreed with the

11

appellate court's reasoning, finding that the wife's contempt petition was a part of her overall action to continue maintenance.  Gutman, 232 Ill. 2d 145.  Without overruling or distinguishing Purdy or Carr, the court simply held that the wife's contempt petition was not a separate claim.  Gutman, 232 Ill. 2d 145.

Having carefully analyzed the above cases, we agree with Carr and the special concurrence in Duggan that postdissolution proceedings are generally new actions.  We do not think that the Second District's approach appropriately acknowledges the significance of Purdy or is flexible enough to accommodate the reality of postdissolution litigation.  The majority in Duggan even acknowledged:

> "Purdy established the proposition that postdissolution petitions are neither (1) part of the single claim encompassing the predissolution proceedings *** nor (2) so intertwined with all other postdissolution matters that they necessarily must be viewed as raising a single postdissolution claim, no part of which could be appealed if some other part remained to be resolved."  Duggan, 376 Ill. App. 3d at 739.

12

The Purdy court specifically emphasized the fact that the father's custody motion was not part of the original dissolution proceeding or any other issue. Purdy, 112 Ill. 2d 1. At the very least, Purdy left open the option for the reviewing court to consider whether a postdissolution order constitutes a final and appealable order if the postdissolution petition was not related to any other matter.

Moreover, we understand that courts desire to avoid deciding piecemeal appeals (Marsh, 138 Ill. 2d 458), but we think the Carr approach, while perhaps allowing more appeals, upholds the trial court's intent in entering a dispositive order. See Duggan, 376 Ill. App. 3d at 746-47 (O'Malley, J., specially concurring). In addition, the other competing policy interest is acting in the best interest of the child. In re A.W.J., 197 Ill. 2d 492 (2001). Postdissolution proceedings may well continue a decade or more after the divorce decree is entered. See Carr, 323 Ill. App. 3d 481. Overall, it does not serve the interests of justice where one party can defeat appellate jurisdiction, especially on issues of child custody, simply by filing a separate, completely unrelated petition. The case sub judice is a perfect example. Rose, having won at the trial level on a custody issue, could simply defeat appellate jurisdiction by filing her petition to

13

extend maintenance which, on its face, has nothing to do with a modification of child custody.

We note briefly that, although there are interlocutory appeals that provide for appellate review in postdissolution proceedings, these mechanisms would not have given us jurisdiction in this case. Illinois Supreme Court Rule 304(b)(6) (eff. Feb. 26, 2010) provides that orders modifying custody are immediately appealable without a special finding by the trial court. However, the trial court did not modify custody in this case; instead, it denied the petition to modify custody. In addition, Illinois Supreme Court Rule 306(a)(5) (eff. Feb. 26, 2010) allows a party to request an interlocutory appeal if the trial court's order affects the care and custody of unemancipated minors. Yet in order to request an interlocutory appeal, the party requesting such an appeal must file a request within 14 days, and here Michael did not file his original notice of appeal until that period had passed. Ill. S. Ct. R. 306(b)(1) (eff. Feb. 26, 2010).

Finally, this holding is not in conflict with Gutman. Gutman accepted the Second District's finding that the petition for rule to show cause was a "part" of the underlying proceeding and consequently represented an unresolved claim that prevented

14

appellate jurisdiction without a Rule 304(a) finding by the trial court. Gutman, 232 Ill. 2d 145. Indeed, petitions for rule to show cause may often constitute part of the underlying proceeding if they are filed during the pendency of a larger petition. See In re Marriage of Carrillo, 372 Ill. App. 3d 803 (2007) (holding that jurisdiction would have been defeated by a pending petition for rule to show cause alleging interference with visitation while custody of children was still in dispute).

Having established all of the above, we hold that we can exercise jurisdiction in this case. The petitions for rule to show cause are not related to the modification for custody petition. In the instant case, the petitions for rule to show cause were filed before the petition for modification for custody. The parties were referred to mediation in the hope that no further court action would be necessary. The mediator reported that the parties had reached an agreement on visitation and communication but not custody. Michael filed his petition to modify custody only after mediation efforts failed. Thus, although there was no final order with regard to the petitions for rule to show cause, those issues were apparently addressed through mediation, and it was only when mediation failed on custody that Michael filed his petition. Furthermore, the

15

petition to modify custody did not mention the petitions for rule to show cause and instead referred to Rose's "erratic and irrational emotional behavior." Overall, the petitions for rule to show cause and the custody petition have the character of two separate actions.

Similarly, Rose's petition to continue maintenance is a separate action. Rose's petition alleges that she needs continued maintenance because of her low income and the fact that she left the work force during the marriage to care for the parties' children. Although the petition makes passing references to "family support" and "child support," the factual allegations contained in Michael's petition to modify custody and Rose's petition for continued maintenance are completely distinct and unrelated. We hold that because the petition for modification of custody was independent and separate from the petitions for rule to show cause and the petition for continued maintenance, they constitute separate actions and not related claims.

## II. Abuse of Discretion

Having decided that we have jurisdiction to review this case, we must now decide whether barring Michael's witnesses pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1,

16

2002) and then dismissing his petition was an appropriate discovery sanction. We review for an abuse of discretion. Shimanovsky v. General Motors Corp., 181 Ill. 2d 112 (1998). An abuse of discretion occurs where no reasonable person would adopt the trial court's view. McClaughry v. Village of Antioch, 296 Ill. App. 3d 636 (1998).

A sanction that results in the dismissal of litigation is considered drastic and should only be employed when all other enforcement efforts have failed. Sander v. Dow Chemical Co., 166 Ill. 2d 48 (1995). Dismissal is appropriate only when a litigant has shown a "deliberate and contumacious disregard for the court's authority." Sander, 166 Ill. 2d at 68.

In this case, barring all of Michael's witnesses and then dismissing his petition was too harsh of a sanction. As Michael concedes, the trial court's dissatisfaction was justified. Despite the fact that Michael was given several more months to complete discovery, he waited until a couple of days before trial to disclose his witnesses. However, dismissal in this case was an abuse of discretion because the trial court imposed the harshest sanction available after insufficient enforcement efforts. See Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003)

17

(holding that dismissal should be employed when other, less drastic sanctions have proven to be unavailing).

Our review of the record establishes that the only effort the trial court undertook to compel Michael into complying with discovery was to continue the trial and issue a new due date. Then, when Michael failed to comply, the court barred his witnesses despite the fact that other sanctions existed, such as holding Michael's attorney in contempt or awarding Rose reasonable attorney fees. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Even acknowledging the wide discretion given to trial courts to impose sanctions, we believe it was an abuse of discretion to bar all of Michael's witnesses after postponing the discovery due date one time.

In addition, "[i]n determining an appropriate sanction, the trial judge must weigh the competing interests of the parties' rights to maintain a lawsuit against the necessity to accomplish the objectives of discovery and promote the unimpeded flow of litigation." Sander, 166 Ill. 2d at 68 (citing Amoco Oil Co. v. Segall, 118 Ill. App. 3d 1002, 1013 (1983)). In the instant case, while the trial court certainly had an interest in seeking compliance with its discovery order, our supreme court has stated that child custody proceedings should focus on the best interest

18

of the child.  Ill. S. Ct. R. 900(a) (eff. July 1, 2006).  We do not find that it is in the best interest of the child to have a custody petition denied pursuant to a discovery sanction instead of hearing the petition on the merits.  Therefore, we hold that the trial court abused its discretion in imposing a sanction that had the effect of dismissing Michael's petition.

### III. Independent Evaluator as Rule 213(f) Witness

Because we hold that the trial court abused its discretion, we do not need to address Michael's argument that Dr. Gardner, a professional therapist appointed pursuant to section 604(b), was not a witness that needed to be disclosed under Rule 213(f).  Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2007).

### CONCLUSION

We hold that we have jurisdiction to hear this case because the postdissolution petition is properly construed as a separate action, not a new claim within the original dissolution proceeding.  Moreover, we hold that the trial court abused its discretion by barring all of Michael's witnesses without engaging in more efforts to encourage compliance, especially in a child custody case.  Therefore, we reverse and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

19

JUSTICE McDADE, specially concurring in part, dissenting in part:

I concur in the judgment of the court with respect to the issue of jurisdiction. I cannot disagree with the analysis of the case law undertaken by the majority. Nor can I overlook the fact that our decision constitutes a reasonable reconciliation of In re Custody of Purdy, 112 Ill. 2d 1 (1986), and In re Marriage of Gutman, 232 Ill. 2d 145 (2008), and the relevant appellate court cases. I, therefore, concur in this portion of the opinion.

I write separately, however, to address a very practical concern. I am troubled by the fact that three "separate actions" in the instant case, all pending in the trial court at the same time, can eventually result in three separate appeals. In my opinion, a failure to resolve all of the concurrently-pending "actions" so they can be reviewed in a single appeal is an unwarranted creation of piecemeal litigation even if it is technically compliant with a credible interpretation of existing law. It is my assumption that, given the split in the circuits on this issue, the supreme court will ultimately resolve it, and trust that this potential and unnecessary proliferation of appeals will form part of its consideration.

With respect to the question of the discovery sanction, I do not find an abuse of discretion and therefore dissent from the contrary finding of the majority. The trial court sanctioned a fairly flagrant violation of the rules of discovery. The fact that one party (Rose) faces the potential of being blind-sided by undisclosed evidence or witnesses seems to me to be no less detrimental to a reasoned determination of the ultimate best interest of the child than the exclusion of evidence tendered by a party who has willfully violated the fair play that is inherent in both the discovery rules themselves and the effectiveness of our adversarial system. The less drastic alternative sanctions suggested by the majority – holding Michael's attorney in contempt or awarding Rose reasonable attorney fees – do not cure the problems of an unbalanced consideration of the issues and an unfair exercise in brinkmanship. As between the party who has followed the rules and the party who violated one court order, failed to take advantage of an extension of the obligation to produce discovery for several months, and then violated the second court order; it does not seem either unreasonable or unfair to sanction the offending party. Nor does it seem unreasonable to characterize this as "a deliberate and

contumacious disregard for the court's authority." Sander v. Dow Chemical Co., 166 Ill. 2d 48, 68 (1995).

I share the majority's concern that such a sanction may impact the evaluation of what is in the best interest of the child. However, the impact is not necessarily unfair inasmuch as it could be reasonably inferred from Michael's disregard of the rule that he either (1) did not care enough about his child to timely comply with its terms or the attendant court orders or (2) did not have confidence that he could prevail on the merits absent an unfair advantage. That assessment is one that rests with the trial judge who is in the best position to make it. It is not our right to second guess the court and make the evaluation on our own.

For all of the foregoing reasons, I agree that we have jurisdiction to hear this appeal, but dissent from the decision reversing and remanding this case.