# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Dianovsky*, 2013 IL App (1st) 121223

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF MARIO DIANOVSKY, Petitioner-Appellant, and IZABELA DIANOVSKY, Respondent-Appellee. |
| District & No. | First District, Second Division<br>Docket Nos. 1-12-1223, 1-12-3423 cons. |
| Filed | September 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court dismissed petitioner's consolidated appeals from the trial court's various postdissolution orders due to the lack of findings from the trial court pursuant to Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal or both, even though other matters remained pending before the trial court. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-30056; the Hon. Pamela E. Loza, Judge, presiding. |
| Judgment | Dismissed. |

| Counsel on Appeal | Ann O'Connell Law, Ltd., of Palatine (P. Ann O'Connell, of counsel), and Karen Aldrich, of Hoffman Estates, for appellant. |
| | |
| | Michael G. DiDomenico, of Chicago (Lake Toback, of counsel), for appellee. |
| | |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Connors and Simon concurred in the judgment and opinion. |

## OPINION

¶ 1    Petitioner, Mario Dianovsky, appeals the order of the circuit court granting his motion to reconsider and reducing the amounts he owes for child support and other expenses. Petitioner also appeals the court's order granting attorney fees to respondent, Izabela Dianovsky, pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508(b) (West 2006)). On appeal, petitioner contends the trial court (1) abused its discretion in denying his initial petition to modify child support; (2) erred when it entered an order limiting his ability to conduct discovery; (3) erred in finding petitioner in contempt of court for failing to pay all ordered child support and for failing to pay the mortgage on the marital residence; and (4) erred in granting respondent's petition for attorney fees. For the following reasons, we dismiss the appeal for lack of jurisdiction.

¶ 2                        JURISDICTION

¶ 3    The trial court granted petitioner's motion to reconsider on April 12, 2012, and petitioner filed his notice of appeal from that order on April 20, 2012. The trial court granted respondent's petition for attorney fees on October 12, 2012, and petitioner filed a notice of appeal on November 13, 2012. This court subsequently consolidated both appeals. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008). However, as explained in detail hereafter, based on the facts of this case and our supreme court's opinion in *In re Marriage of Gutman*, 232 Ill. 2d 145 (2008), the lack of Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) findings renders this court without jurisdiction over this appeal.

¶ 4                        BACKGROUND

¶ 5    The parties married on January 18, 1997, and two children were born from the marriage (twins M.D. and B.D.), on October 2, 2004. In 2008, petitioner filed for dissolution of

marriage and the trial court entered a judgment for dissolution of marriage on January 9, 2009. The judgment incorporated the terms of the parties' marital settlement agreement. The agreement stated that the parties had joint custody of the children and provided for child support as follows:

"Husband shall pay to Wife, as and for child support for the minor children, the sum of $2,600.00 each month, payable on the first day of each month beginning the first day of the entry of a Judgment for Dissolution in this matter. Said amount is an upward deviation from the 28% ($1900-2000 per month = 28%) of Husband's reported net income as Husband is self-employed in the building trades and his income fluctuates greatly. Said amount is based on the needs of the minor children as well as Wife's waiver of maintenance. Both parties reserve the right to file a Petition to Modify said support provision based on a substantial change in circumstances. In addition, Husband agrees to pay one hundred (100%) of the children's pre-school tuition, books and fees through the 2009-2010 school year after which time the cost of tuition, books and fees will be shared equally by the parties. Husband and Wife further agree that each shall pay fifty (50%) of the tuition, books and fees for the children's attendance at Polish School. When the children begin primary school, Husband and Wife agree to share equally the cost of school tuition, books and fees, before and after school care and the costs incurred for the children's attendance at Polish School."

¶ 6       With regard to the marital residence, the parties agreed as follows:

"Wife shall reside in the marital residence with the minor children and is awarded exclusive possession of same until such time as the property is sold and closes. The parties agree to cooperate in the listing, showing and sale of said property. During such time as Wife resides in the marital residence with the children, Husband shall be responsible for payment of the mortgage payments until such time as the property has been sold and closes, or the parties file for relief under Chapter 7, should they need to do so. Any proceeds realized from the sale of the property will be shared equally by the parties."

¶ 7       After entry of the dissolution judgment, petitioner filed an emergency motion for enforcement of the judgment, alleging that respondent refused to sign a contract for sale of the marital residence with a closing date of March 20, 2009. On February 26, 2009, the trial court entered an order stating "[t]hat [respondent] shall abide by the terms of the Judgment for Dissolution of Marriage and pay to the mortgage lender all of the balance due on the marital home at 612 Elmdale Road, Glenview, IL including the current mortgage, taxes and any other expenses due on said mortgage balance as of March 5, 2009." Respondent's present husband paid off the balance of the mortgage and petitioner signed a quitclaim deed conveying his interest in the marital residence to respondent. In May 2010 the residence sold for $1,335,000.

¶ 8       On July 1, 2009, petitioner filed a petition to modify/abate support in which he alleged a substantial change in circumstances due to his reduced income and respondent's remarriage. On July 31, 2009, respondent filed a petition for rule to show cause for a finding of indirect civil contempt and other relief. Respondent's petition alleged eight counts: (1)

petitioner was in arrears on child support; (2) petitioner failed to pay tuition and expenses for the children; (3) petitioner failed to pay medical and dental expenses for the children; (4) petitioner failed to pay for the children's summer camp and extracurricular activities; (5) petitioner failed to pay the mortgage on the marital residence from February 1, 2009, to March 5, 2009; (6) petitioner failed to pay respondent's legal expenses in connection with a lawsuit against his painting business, De Villa Painting Corporation (De Villa); (7) petitioner failed to pay the credit card debt of De Villa; and (8) petitioner failed to tender funds to respondent in connection with the Puerto Rico investment property. Respondent also requested attorney fees associated with the petition.

¶ 9         Respondent filed an amended petition for rule to show cause on March 2, 2010. The eight counts listed in the initial petition remained, but the amended petition updated the amounts owed on each count. The amended petition also listed a ninth count, alleging that petitioner failed to maintain life insurance coverage as required under the judgment.

¶ 10        On July 20, 2010, petitioner served respondent with a notice to produce and with interrogatories requesting documents and information in connection with her amended petition for rule to show cause. Respondent filed objections and the trial court held a hearing on the objections. On September 23, 2010, the trial court entered an order granting respondent's objections.

¶ 11        On August 6, 2010, petitioner filed an amended motion to modify/abate support which added allegations that his obligation to pay was based on an annual net income of $111,500 and his statutory net income since July 1, 2009, was less than $65,000 per year, and that respondent had unilaterally made decisions concerning the children in violation of the judgment. A trial was held on July 20, 2011, November 8, 2011, December 5, 2011, December 14, 2011, and December 15, 2011, on respondent's petitions for rule to show cause and petitioner's motions to modify/abate child support.

¶ 12        Petitioner testified that the general contractors for whom De Villa provided services went out of business in 2009. He stated that he used a line of credit and credit cards to pay bills and to purchase three rental properties. He and his partner, Witold Kania (Witold), each paid 50% of the purchase price. Petitioner paid $15,000 each for two properties, and $20,000 for the third property. He testified that he subsequently transferred the properties to Witold's wife, Katherine, but he received no money in the transfer because he owed Witold money.

¶ 13        Petitioner's accountant, Jan Jaworski, testified that he has prepared taxes for petitioner and respondent for at least 10 years. He stated that in 2007, respondent was the sole owner of De Villa and she remained the sole owner until 2008 when she resigned and petitioner obtained 100% of the company's shares. In 2007, DeVilla's net income was $110,000. In 2008, its net income was $91,000. In 2009, De Villa's net income dropped to $40,153. Petitioner's adjusted gross income as reported on his tax returns was $179,000 in 2007, $72,907 in 2008, $29,530 in 2009, and $49,205 in 2010. Petitioner, however, stated that De Villa paid some of his personal expenses and that he withdrew $132,847.43 from De Villa in 2009. In 2008, he withdrew $487,197.48 from De Villa. Petitioner testified that in December 2009, his line of credit was frozen and he could no longer use his credit cards. By the date of trial in 2012, his bank accounts were also frozen. He testified that his income

decreased due to the slowing economy and its effect on the construction business.

¶ 14    Petitioner also testified that he, Witold, and Peter Dabrowski founded a limited liability company named A Plus Rental Management (A Plus). The founders withdrew from the company in 2009, leaving Katherine as the sole member. Petitioner stated that he received $7,000 to $8,000 from A Plus but he had not been given a 1099 or K-1 form. Respondent presented evidence that A Plus had issued checks to petitioner's mother in 2009 and 2010, even though she had no interest in the company and did not work for the company. The checks totaled more than $25,000. Petitioner testified that the money paid to his mother was his money and he instructed A Plus to write the checks to her to avoid creditors so he could pay child support.

¶ 15    Petitioner was also partners with Witold and Katherine in two Puerto Rican ventures. One, Costa Marfeld, LLC, was not successful and a judgment against petitioner was entered but has not been collected. Petitioner, however, did receive a $25,000 return on the other venture, Pico de Pietra, which he claimed he invested with Witold and Katherine to rehabilitate properties. In his testimony, Witold stated that in 2009, he and petitioner each received $60,000 from the sale of automobiles in Poland and that petitioner placed the funds in a Polish bank account. This money does not appear on petitioner's 2009 or 2010 federal tax return.

¶ 16    The trial court issued its order on December 29, 2011. It found inexplicable discrepancies in petitioner's income evidence and found that his "allegation in his original Petition to Modify/Abate Support is completely without merit." Furthermore, it noted that petitioner's "Income and Expense Affidavit[s] are completely unreliable and are not worth the paper on which they are written." It further noted that petitioner's use of "the Kanias as straw people to try and defeat [respondent's] interest in the properties is only a veiled attempt to create a sham of poverty."

¶ 17    The trial court found that petitioner's 2009 federal tax return listed his total income as $33,548. It noted, however, that it must add "25,000 Petitioner received from the Pico de Pietra Project, the $60,000 he received in Poland from the sale of motor vehicles and the $6,191 he received from his mother from the A Plus Rental Checks for a total income of $124,739. There was no substantial change in Petitioner's circumstances from the January 9, 2009 entry of the Judgment for Dissolution to July 1, 2009, the time of the filing of this first Motion to Modify/Abate through the end of 2009."

¶ 18    Regarding petitioner's income in 2010, the trial court noted that although his 2010 federal tax return listed income of $55,191, it must add $26,100 petitioner received from A Plus and $12,150 he withdrew from his business account for a total of $93,441. It also noted that respondent presented evidence that petitioner often used De Villa's account to pay for personal and incidental expenses which should also be added. The trial court found no substantial change in circumstances in petitioner's income in 2010. Instead, "Petitioner not only had the ability to pay the support but he chose to use the money he had to make other investments rather than invest in the support of this [*sic*] children."

¶ 19    The trial court then addressed respondent's amended petition for rule to show cause. The court granted four of the nine counts, finding petitioner (1) "to be in willful and wanton

indirect civil contempt of court for failure to pay child support in the amount of $29,120 plus statutory interest"; (2) "to be in willful and wanton indirect civil contempt of court for his failure to [pay] day care, tuition, books and fees in the amount of $16,336.65"; (3) "to be in willful and wanton civil contempt of court for his failure to pay summer camp expenses for the two minor children in the amount of $1,148.30"; and (4) "to be in willful and wanton civil contempt of court for his failure to pay the mortgage on the marital residence until March 5, 2009 in the amount of $12,309.53."

¶ 20 On January 13, 2012, the trial court set an initial purge amount in which petitioner must pay $15,000 on or before February 10, 2012. It further provided that "if [petitioner] fails to pay said purge on or before February 10, 2012, then he shall be committed to the Cook County jail." On January 27, 2012, respondent filed her petition for attorney fees pursuant to section 508(b) of the Act. The petition requested $49,446.49 in attorney fees.

¶ 21 On January 30, 2012, petitioner filed a motion to reconsider the court's December 29, 2011, order. The motion consisted of 20 counts and included a list of his child support payments and payments made to Messiah Lutheran Child Care Center.

¶ 22 On February 7, 2012, petitioner filed a motion to reduce the purge amount and/or extend the payment due date. On February 9, 2012, the trial court issued an order stating that "[t]he purge has not been satisfied" and gave petitioner until March 12, 2012, to pay the remaining $8,000 of the purge amount. Petitioner subsequently paid the remaining amount.

¶ 23 Respondent filed a second amended petition for rule to show cause containing four counts. The petition merely updated the amounts owed which were granted by the trial court on her first amended petition on December 29, 2011. This second amended petition remains pending before the trial court.

¶ 24 On April 12, 2012, the trial court granted petitioner's motion to reconsider in part. It reduced the amount of child support owed to $28,020 and the amount of day care owed to $12,436.19. Petitioner filed a notice of appeal on April 20, 2012, appealing the December 29, 2011, and the April 12, 2012, orders. Neither order contained an Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) finding.

¶ 25 On October 12, 2012, after a hearing, the trial court granted respondent's petition for attorney fees in the amount of $38,142.95. Petitioner filed a notice of appeal from that order on November 13, 2012, and this court subsequently consolidated both appeals.

¶ 26                                     ANALYSIS

¶ 27 Before addressing the merits of this appeal, we must first determine whether we have jurisdiction in this case. Respondent argues that this court lacks jurisdiction because her second amended petition for rule to show cause remains pending before the trial court, and the trial court made no Rule 304(a) finding with respect to any of its orders in the case. We note that petitioner did not file a reply brief and therefore has not responded to the jurisdiction issue raised by respondent.

¶ 28 Rule 304(a) states that "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all

of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Our supreme court has defined a " 'claim' as 'any right, liability or matter raised in an action.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 464 (1990)). Therefore, a notice of appeal filed before the trial court enters an order disposing of the last pending claim, and with no Rule 304(a) finding, is premature and must be dismissed for lack of jurisdiction.

¶ 29 In the case before us, the trial court entered an order on December 29, 2011, denying petitioner's motion to modify/abate support and granting four counts of respondent's amended petition for rule to show cause. Petitioner filed a motion to reconsider on January 30, 2012, and while that motion was pending, respondent filed her second amended petition for rule to show cause which updated the amounts petitioner owed pursuant to the December 29, 2011, order. On April 12, 2012, the trial court entered an order granting petitioner's motion to reconsider. The order reduced the amount petitioner owed for support and daycare/education expenses and, as petitioner stated in his brief, "modified the Order of December 29, 2011." The trial court made no Rule 304(a) finding as to any of its orders, and respondent's second amended petition for rule to show cause remains pending before the trial court. The issue is whether respondent's pending petition is a claim within the meaning of Rule 304(a) such that a Rule 304(a) finding is required for this court to have jurisdiction to consider this appeal.

¶ 30 Our supreme court addressed this very issue in *In re Marriage of Gutman*, 232 Ill. 2d 145 (2008). In *Gutman*, Mary Gutman filed a petition to continue and modify her maintenance award on June 21, 2002. On August 20, 2003, Daniel Gutman filed a petition to modify the judgment for dissolution and to terminate maintenance. Mary filed a petition for indirect civil contempt on September 18, 2003, alleging Daniel had stopped making maintenance payments as of September 1, 2003. The trial court entered a rule to show cause against Daniel on September 25, 2003, and set a date for hearing on the rule and on the parties' pending maintenance petitions. *Gutman*, 232 Ill. 2d at 147-48. Mary failed to appear at the hearing and the trial court subsequently granted Daniel's motion to terminate maintenance and dismissed with prejudice Mary's motion to continue and modify maintenance. The court's June 23, 2005, order did not address Mary's contempt petition nor did it contain a Rule 304(a) finding. *Id.*

¶ 31 Mary filed a motion to vacate the order on July 22, 2005, which the trial court denied. Thirty-five days later, Mary filed a motion to reconsider, which the trial court also denied. Mary appealed and the appellate court dismissed her appeal for lack of jurisdiction. The appellate court found that the trial court's June 23, 2005, order was a final judgment as to all claims in the dissolution action, and Mary's pending contempt petition did not raise a claim for relief requiring a Rule 304(a) finding. It found that the contempt petition instead was an original proceeding separate from the underlying dissolution action. Therefore, because Mary failed to file her notice of appeal within 30 days of the denial of her motion to vacate, her appeal was untimely. *Id.* at 148-49.

¶ 32 Our supreme court allowed Mary's petition for leave to appeal and determined the issue

of "whether an order is final and appealable absent a Rule 304(a) finding where a contempt petition remains pending." *Id.* at 150. It found that the appellate court mistakenly relied on *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 415 (1970), in holding that a civil contempt petition is " ' "an original special proceeding, collateral to, and independent of, the case in which the contempt arises." ' [Citation.]" *Gutman*, 232 Ill. 2d at 152 (quoting *In re Marriage of Gutman*, 376 Ill. App. 3d 758, 762 (2007)). Rather, *Kazubowski* held that an adjudication in a contempt proceeding which has imposed a sanction that " 'does not directly affect the outcome of the principal action' " is final and appealable as an original special proceeding. *Id.* (quoting *Kazubowski*, 45 Ill. 2d at 414-15). The supreme court found that the appellate court in *Gutman* "disregarded the language limiting the original and special status to an adjudication of contempt" and "unjustifiably expanded" it to apply to pending contempt petitions. *Id.*

¶ 33　　The supreme court also referred to Rule 304(b)(5) (Ill. S. Ct. R. 304(b)(5) (eff. Jan. 1, 2006)) for further support. Rule 304(b)(5) provides that an order finding a person in contempt and imposing a monetary or other penalty is appealable without a Rule 304(a) finding. *Gutman*, 232 Ill. 2d at 153. Therefore, "[i]t is clear from the language of the rule that only contempt judgments that impose a penalty are final, appealable orders." *Id.* The supreme court reasoned that until the trial court enters "a contempt order imposing a sanction, a contempt petition provides no basis for obtaining immediate appellate jurisdiction over any part of the case under Rule 304(b)(5)." *Id.*

¶ 34　　The supreme court held that since Mary's contempt petition was still pending with no sanctions yet imposed, it remained a claim for relief in the same action as the two maintenance petitions addressed in the June 23, 2005, order. Therefore, her appeal, "filed before the resolution of her contempt petition and without a Rule 304(a) finding, was premature." *Id.* at 156.

¶ 35　　In the case before us, petitioner filed a motion to modify/abate support and respondent filed an amended petition for rule to show cause/indirect civil contempt. On December 29, 2011, the trial court denied petitioner's motion and granted four counts of respondent's petition for rule to show cause. The trial court set an initial purge, requiring petitioner to pay $15,000 on or before February 10, 2012, or he "shall be committed to the Cook County Jail."

¶ 36　　Petitioner filed a motion to reconsider on January 30, 2012, and filed a motion to reduce the initial purge amount or extend the payment due date on February 7, 2012. The trial court subsequently gave petitioner until March 12, 2012, to pay the purge amount, which he did pay by that date. Meanwhile, respondent filed a second amended petition for rule to show cause/indirect civil contempt which updated the amounts owed pursuant to the December 29, 2011, order.

¶ 37　　On April 12, 2012, the trial court granted the motion to reconsider and reduced the amount petitioner owed in support and expenses. The order, according to the briefs, also outlined the remaining purge.[1] Petitioner filed his notice of appeal on April 20, 2012. Respondent's second amended petition for rule to show cause, however, remains pending.

---

[1]The record does not contain the trial court's April 12, 2012, order.

As in *Gutman*, the trial court here has not yet entered a contempt order imposing a sanction on the second amended petition. Therefore, the petition is a claim within the meaning of Rule 304(a) and an appeal filed before the resolution of her contempt petition, without a Rule 304(a) finding, is premature. See *Gutman*, 232 Ill. 2d at 156.

¶ 38    We note, however, that since *Gutman*, two cases addressing this issue have found that a postdissolution order constitutes a final and appealable order without a Rule 304(a) finding, even when a postdissolution petition remains pending, if the pending petition is completely distinct and unrelated to the order ruled upon. In *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091, 1099 (2011), the Third District found that the pending petitions for rule to show cause and to extend maintenance "have the character of two separate actions" and "are completely distinct and unrelated" to the petition to modify custody the trial court ruled upon. In *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 36, the First District found that a pending petition for attorney fees was "wholly unrelated" to the petition to remove the parties' children from Illinois to New Jersey. As a result, both courts held that the postdissolution order entered by the trial court was a final, appealable order, without a Rule 304(a) finding, despite the fact that postdissolution petitions remained pending. *A'Hearn*, 408 Ill. App. 3d at 1099; *Demaret*, 2012 IL App (1st) 111916, ¶ 38.

¶ 39    In so holding, both courts reasoned that the supreme court in *Gutman* never directly addressed the effect of unrelated pending claims on the appealability of a postdissolution order. The court in *A'Hearn* found its rule "flexible enough to accommodate the reality of postdissolution litigation." *A'Hearn*, 408 Ill. App. 3d at 1097. *A'Hearn* noted that postdissolution proceedings could last a decade or more after the judgment for dissolution, and found that "it does not serve the interests of justice where one party can defeat appellate jurisdiction, especially on issues of child custody, simply by filing a separate, completely unrelated petition." *Id.* at 1098. The court in *Demaret* expressed the same concern, quoting *A'Hearn*. *Demaret*, 2012 IL App (1st) 111916, ¶ 37.

¶ 40    First, we find the case before us distinguishable from *A'Hearn* and *Demaret* in that our case involves a pending petition for rule to show cause in which the issue of payment is related to the trial court's December 29, 2011, order addressing petitioner's motion to modify/abate support. Based on the facts of our case, *Gutman* is on point. Second, we acknowledge the concern expressed in *A'Hearn* and *Demaret* that finding pending postdissolution petitions are related claims to the underlying action could allow a party to preclude review of a dispositive order "simply by filing a separate, completely unrelated petition." *A'Hearn*, 408 Ill. App. 3d at 1098. However, we note that any party seeking review of a dispositive order in a postdissolution proceeding, while other petitions remain pending, need only request a Rule 304(a) finding from the trial court that there is no just reason to delay enforcement or appeal or both. Like the order in *Gutman*, the December 29, 2011, order here did not address the pending second amended petition for rule to show cause, nor did it impose a sanction on that petition. Therefore, the pending petition is not a separate claim independent of the underlying action and a Rule 304(a) finding is required to appeal the December 29, 2011, order and the April 12, 2012, order granting petitioner's motion to reconsider. The trial court below made no Rule 304(a) findings as to any of its orders. Thus, we lack jurisdiction over this appeal.

¶ 41        For the foregoing reasons, we dismiss the consolidated appeals for lack of jurisdiction.

¶ 42        Dismissed.