2019 IL App (1st) 182443-U
No. 1-18-2443
Order filed December 9, 2019

First Division

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF REEDY | ) | |
| | ) | Appeal from the |
| (Maureen M. Reedy, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 06 D 5560 |
| v. | ) | |
| | ) | Honorable |
| Scott E. Reedy, | ) | Raul Vega, |
| | ) | Judge, presiding. |
| Respondent-Appellant.) | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's judgment retroactively granting Maureen additional child support for the years 2009 to 2015. A retroactive support award is appropriate because the parties' marital settlement agreement set child support as a percentage of Scott's net income and required Scott to provide Maureen with updated tax documents yearly. The trial court's order is enforcement—not "modification"—of the parties' original agreement.

¶ 2                              Background

¶ 3      Maureen and Scott were married on September 18, 1993. They had two sons, born in 2001 and 2003. The trial court entered an order dissolving their marriage on October 29, 2008. The court's judgment expressly incorporated the terms of the parties' marital settlement agreement (MSA). As part of the MSA, the parties agreed that Scott would pay child support. Paragraph 4A of the MSA provides, in relevant part:

> "[¶ 4A] Upon entry of the Judgment and continuing each month thereafter, Scott shall pay child support for [the children] in the amount of Two Thousand One Hundred Forty-Eight Dollars ($2,148.00) per month payable on the first Thursday of each month. The parties agree and acknowledge that said child support is guideline support of twenty-eight percent (28%) based upon Scott's annual net salary. Scott represents and warrants that his annual net income from Source One Staffing, Inc. is $92,062."

In the next paragraph of the MSA, Scott agreed to provide his tax returns to Maureen every year:

> "[¶ 4B] Each year in which Scott is obligated to pay child support pursuant to paragraph 4A of this Agreement, Scott shall provide copies to Maureen of his Federal and State Income Tax Return, with all schedules attached and K-1 statements and calculations as to his net income within thirty (30) days of filing same and no later than the due date intended for filing extensions."

Scott's support obligations were to continue until their two children turned 18 or graduated high school, whichever came later, or until either child became otherwise emancipated, or until entry of a contrary order by a court of competent jurisdiction.

¶ 4    On March 25, 2014, Maureen filed a petition for rule to show cause for indirect civil contempt. She alleged that Scott had violated the MSA by not providing his tax returns for any year from 2008 to 2013, despite Maureen's request. Maureen needed the returns "to verify Scott's income so that the correct child support obligation can be determined." The trial court entered an order giving Scott two weeks to comply with his obligations to give Maureen his tax returns for the years 2008 through 2013.

¶ 5    Maureen then filed a "Petition for Child Support and Other Relief," alleging Scott had provided his tax returns and they showed he should have paid her an additional $406,603 based on the calculation of 28% of Scott's net income for the years 2009 through 2013. Maureen requested an order for Scott to "pay retroactive guideline child support" from January 1, 2009 to the date of the filing of the petition. She claimed in her petition that she "s[ought] to modify the dollar amount of Scott's child support" based on his increase in disclosed income. The prayer for relief in her petition included a modification of the dollar amount to reflect 28% of Scott's income, statutory interest for all support post-dating January 1, 2009, and an order requiring Scott to pay all attorney's fees.

¶ 6    Scott filed a response, which disputed Maureen's calculation of the additional child support he owed and argued: "[Maureen] is barred, pursuant to 750 ILCS 5/510, from seeking a modification of child support for any time prior to November 10, 2014, which was the date [Maureen]'s Petition was filed."

¶ 7    The parties filed memoranda in support of their respective positions and the trial court held hearings spanning several months. Scott and Maureen both testified. Because the facts are not in dispute we need not recite their testimony in great detail.

¶ 8    Briefly, Scott testified about his income and tax obligations for each year from 2009 to 2015. Maureen testified about Scott's failure to provide tax documents to her for any year after the entry of the judgment dissolving their marriage. Scott and Maureen's accountant, Michael Rubin, also testified about Scott's income and tax obligations for the relevant years.

¶ 9    The trial court entered an order granting Maureen retroactive child support. The trial court found Scott had failed to provide his income tax returns to Maureen as the MSA required. The trial court made detailed factual findings about Scott's income based on his tax documents, his testimony, and Rubin's testimony. As with the parties' testimony, those factual findings are not relevant (Scott does not challenge them), but they led the trial court to conclude Scott owed a total of $323,949.52 in retroactive child support for the years 2009 through 2015.

¶ 10    The trial court's order also allowed Maureen to file a fee petition within 35 days. Maureen filed her petition on August 31, 2018. Before the trial court ruled on the fee petition, Scott filed a motion to reconsider on September 7, 2018, asserting the trial court had erred "as a matter of law" when it ordered child support for a time period pre-dating the filing of Maureen's petition. Scott argued Section 5/510(a) of the Marital Dissolution Act (750 ILCS 5/510(a) (West 2018)) only allowed for modification of child support for installments accrued *after* the filing of a motion to modify.

¶ 11    On November 14, 2018, the trial court held a hearing on Scott's motion to reconsider. Maureen's counsel initially argued the trial court should strike the motion to reconsider as untimely because it was filed more than 30 days after the entry of the trial court's order granting child support. On the merits, Maureen's counsel emphasized her petition for child support "was not a motion for modification. This was a motion for on [*sic*] past child support." The trial court

struck Scott's motion to reconsider as untimely, finding its July 30 order to have been final and appealable. The court also granted Maureen's petition for fees. Scott filed a notice of appeal two days later.

¶ 12                                    Analysis

¶ 13    Scott contends the trial court erred by awarding Maureen retroactive child support. He says the Marital Dissolution Act allows courts to modify awards of child support, but to do so only prospectively. See 750 ILCS 5/510(a) (West 2018). Maureen agrees with Scott's interpretation of Section 5/510(a)—modifying child support awards is a forward-looking enterprise—but, she responds she was not seeking modification of the trial court's original order. Instead, Maureen maintains, she sought nothing more than an order enforcing the child support terms of the MSA. In reply, Scott asserts that Maureen's argument about enforcement has been forfeited and, regardless of any possible forfeiture, Maureen's petition for child support cannot be reasonably read as an attempt to enforce the MSA.

¶ 14                                    Jurisdiction

¶ 15    As a preliminary matter, Maureen contests our jurisdiction to hear Scott's appeal. Her argument turns on the meaning of Illinois Supreme Court Rule 304(a), which requires the trial court to make an "express written finding" that a claim can be immediately appealed if the trial court's order disposes "fewer than all of the *** claims" in an action. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). She claims Scott's motion to reconsider was untimely, having been filed more than 30 days after the trial court's order of retroactive child support. According to Maureen, no 304(a) finding was necessary to allow Scott to appeal because "the pending petition for attorney's fees was unrelated to [her] petition for back child support." It follows, so says

Maureen, that Scott's notice of appeal was untimely since the late motion to reconsider did not toll the 30-day period Scott had to appeal.

¶ 16    Scott responds that Maureen's petition for attorney's fees was still pending at the time he filed his motion to reconsider, meaning the trial court had not yet disposed of all of Maureen's claims. In Scott's view, the trial court had to make a Rule 304(a) finding to make its order granting retroactive support immediately appealable. Maureen included attorney's fees as part of the requested relief in her petition for child support and the trial court's judgment granted Maureen leave to file the petition for fees. We agree with Scott that we have jurisdiction.

¶ 17    The parties' jurisdictional argument takes us to the brink of an entrenched split in the appellate court districts about the interpretation of Illinois Supreme Court Rules 301 and 304(a) in postdissolution proceedings. See *In re Marriage of Teymour and Mostafa*, 2017 IL App (1st) 161091, ¶¶ 17-39 (comparing *In re Marriage of Carr*, 323 Ill. App. 3d 481 (1st Dist. 2001) and *In re Marriage of A'Hearn*, 408 Ill. App. 3d 1091 (3d Dist. 2011), with *In re Marriage of Alyassir*, 335 Ill. App. 3d 998 (2d Dist. 2003), and *In re Marriage of Gaudio*, 368 Ill. App. 3d 153 (4th Dist. 2006)). The court in *Teymour* rejected *Carr* and purported to bring the First District in line with the Second and Fourth. *Teymour*, 2017 IL App (1st) 161091, ¶ 41.

¶ 18    Another division of the First District agreed with *Teymour*, but ultimately held it lacked jurisdiction following the reasoning on either side of the split. *In re Marriage of Sanchez and Sanchez-Ortega*, 2017 IL App (1st) 171075, ¶ 27-8. We take a similar approach. We have jurisdiction looking to either line of cases.

¶ 19    On one hand, the Third District set out the general principle, "postidssolution petitions or motions that are separate actions are independently appealable upon their resolution, whereas

filings that are part of a larger action are only appealable when the larger action is resolved, absent a Rule 304(a) finding." *A'Hearn*, 408 Ill. App. 3d at 1094. The court, focusing on the content of the filings, found them to be independent. *Id.* at 1098. The court was careful to emphasize that "on its face" the wife's petition for maintenance had "nothing to do with a modification of child custody." *Id.* at 1093-94. The court concluded that separate filings *could* be related to the underlying proceeding "if they are filed during the pendency of a larger petition." *Id.* On the facts present before the Third District, the husband's petitions for rules to show cause were not related to the petition to modify custody; they were separate just like the wife's petition for maintenance. *Id.* at 1098-99. The court's resolution of the husband's petition to modify custody was, therefore, final and immediately appealable without a Rule 304(a) finding. *Id.*

¶ 20    We are confronted with a different circumstance here. Focusing on Maureen's petition for child support, it includes an express request for attorney's fees "on its face." Then, after the petition for support was granted, the trial court granted Maureen leave to file the petition for fees "during the pendency of [the] larger petition" for support. Maureen was in control of her pleadings and cannot now attempt to defeat our jurisdiction by counterfactually separating her request for fees from her request for child support.

¶ 21    On the other hand, the Fourth District has held, "[r]egardless how the issues are raised (in a single petition versus separate petitions), if an order finally resolves a separate claim but leaves other claims pending, the trial court must make a Rule 304(a) finding before the order is appealable." *Gaudio*, 368 Ill. App. 3d at 159 (aligning itself with *Alyassir*). We have described the Second and Fourth District's opinions as creating a regime in which every postdissolution filing is part of only one action raising several claims. *Teymour*, 2017 IL App (1st) 161091, ¶ 38.

Whether the claims are related or not, the trial court must either make a Rule 304(a) finding to render its judgment appealable, or the parties must await the disposition of all pending matters. See *id.*

¶ 22    Under this conception of postdissolution practice, we undoubtedly have jurisdiction over Scott's appeal. Even if we thought Maureen's petition for fees was a separately filed claim and not part of the relief for her initial claim, under *Alyassir*, *Gaudio*, and *Teymour*, Scott had to wait for the disposition of the fee petition to appeal absent a Rule 304(a) finding. There was no 304(a) finding so Scott's notice of appeal was timely filed two days after the trial court's ruling on the fee petition.

¶ 23                                    Forfeiture

¶ 24    We briefly address forfeiture. Scott asks us to disregard the entirety of Maureen's argument that the trial court simply enforced, rather than modified, the terms of the MSA by ordering retroactive support. Specifically, Scott claims Maureen cannot now frame her argument as one of enforcement of the MSA, relying on Section 5/505(d) of the Marital Dissolution Act, when she actually sought to modify the terms of the MSA in the trial court, relying on Section 5/510(a) of the Act. We disagree with Scott.

¶ 25    Scott's argument turns largely on his claim that "at no time in the trial court did Maureen seek any relief pursuant to 5/505(d)." That is not true. Her petition for support says in its first sentence that Maureen "requests that [the trial court], pursuant to 750 ILCS 5/505, 510 and 511 *** set appropriate child support." We find the lack of a citation to a precise subsection irrelevant, particularly because the substance of Maureen's arguments both in the trial court and in this court focused on enforcing the order for child support already in effect, even if she also

described her claim as modifying the terms of the MSA to seek additional child support. See *O'Neal-Vidales v. Clark*, 2015 IL App (2d) 141248, ¶ 18 (declining to find party forfeited reliance on particular case simply by failing to cite case in trial court where party otherwise "clearly raised the issue.").

¶ 26    Of equal importance, Maureen is the appellee and "may raise an issue on review that was not presented to the trial court to sustain the judgment, as long as the issue's factual basis was laid before the trial court." *U.S. Bank, Nat'l Ass'n as Trustee for Credit Suisse First Boston CSFB 2005-11 v. Laskowski*, 2019 IL App (1st) 181627, ¶ 17.

¶ 27    Scott insists that Maureen's request for retroactive child support was exclusively based on a request to modify the original agreement for child support in the MSA and relied at all times on Section 5/510(a) of the Act. We cannot find support for this in the record. Maureen's petition asserts Scott failed to follow the MSA and asks the court to award child support that Scott "ought to have paid" all along. Maureen phrased her memorandum of law in support of her petition almost entirely in terms of enforcing Scott's preexisting obligations to provide her with the tax returns. Maureen wanted the trial court to "honor the parties' agreement for child support," to "enforce[ ] retroactively" Scott's obligation to pay 28% of his net income, and to order retroactive support to "enforce court orders." During litigation on Scott's motion to reconsider the trial court's order of retroactive support, Maureen's counsel could not have been more emphatic: "[T]his was not a motion for modification. This was a motion for on [*sic*] past child support. We didn't file for modification whatsoever."

¶ 28    Scott correctly points out that Maureen occasionally used the word "modify" in her filings. We agree that Maureen's arguments could have been more precise. But Scott's approach

to forfeiture is too rigidly formalistic. A holistic reading of Maureen's filings and arguments show she sought retroactive child support based on Scott's alleged failure to comply with the written terms of the MSA. She has not forfeited her argument that the trial court properly awarded retroactive child support in conformity with the MSA simply because she uses the word "enforcement" more often in her appellate brief than she did in her trial court filings.

¶ 29                                    The Petition for Support

¶ 30    Scott argues the trial court erred, as a matter of law and public policy, when it granted Maureen's petition for child support. According to Scott, the trial court's action constituted an improper retroactive modification of the child support provisions in the MSA. Maureen, as we have discussed, counters that the trial court did no more than enforce the MSA. Before proceeding, we find it important that Scott does not challenge the trial court's factual finding he violated the terms of the MSA requiring him to provide Maureen with his tax returns.

¶ 31    Section 5/510(a) of the Marital Dissolution Act, on which Scott relies, only allows prospective modification of child support: "the provisions of any judgment respect maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a) (West 2018). Maureen correctly concedes that modification can only be done on a forward-looking basis. See *In re Marriage of Peterson*, 2011 IL 110984, ¶ 18 ("a retroactive modification is limited to only those installments that date back to the filing date of the petition for modification."). Given the parties' agreement on this point, we are not really being asked to decide (as Scott puts it) whether the trial court can retroactively modify a child support order. Statutory and Illinois Supreme

Court authority makes plain the court cannot do so. Our task, instead, involves interpreting Scott and Maureen's MSA to determine whether the trial court's order constitutes a "modification."

¶ 32     We interpret the parties' MSA under contract principles, giving effect to the intent of the parties as expressed in the MSA's plain language. *In re Marriage of Coulter and Trinidad*, 2012 IL 113474, ¶ 19. See relevant provisions of the MSA at ¶ 3.

¶ 33     Adjustments of a parent's child support obligations to conform to the percentage of net income set out in the MSA do not require court approval. *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 47 (2008). That's because it is "*not a modification* of [the husband]'s support obligation." *Id.* (emphasis added). In *Baumgartner*, the parties' MSA "contemplated that after [the husband] provided the required financial information, the parties would come to an agreement regarding the additional amount of child support that was due." *Id.* We reasoned that the parties could update child support obligations out of court as they were doing no more than "acting under the direction of the circuit court's order" initially setting child support. *Id.*

¶ 34     The MSA in *Baumgartner* contained similar language to MSA here, providing, "[husband] shall pay $762 per month to [wife] as child support which is 20% of his estimated net income." *Id.* at 41. The MSA, again like the one at issue, also required the husband "on an annual basis, within 30 days" of receiving tax documents, to provide those documents to his former wife. *Id.* We acknowledge the MSA in *Baumgartner* provided more specifics on the procedures. For example, the MSA expressly required the husband to "recompute his net income" and if the amount of support was less than that income he was to "pay [the wife] the difference between the amount paid and the computed 20% figure." *Id.* at 41. Maureen and Scott's MSA does not contain similar language, but that distinction is not dispositive.

- 11 -

¶ 35    Part of our task, when interpreting contracts like the MSA, requires not rendering a provision of the contract meaningless. *Wolfensberger v. Eastwood*, 382 Ill. App. 3d 924, 934 (2008). The combined provisions in the MSA—setting out a percentage of Scott's income as the basis for support in paragraph 4A plus Scott's requirement to annually update Maureen with his tax documents in paragraph 4B—become empty words if Scott and Maureen were not meant to work out Scott's updated child support obligation yearly.

¶ 36    Because Scott does not challenge the trial court's finding that he violated the terms of the MSA, we see no basis to find the trial court abused its discretion in ordering him to pay child support on the terms to which he agreed.

¶ 37    Affirmed.